STATE, Plaintiff-Respondent, v. KREUSER,
Defendant-Appellant.

Supreme Court

No. 76–477–CR. Submitted on briefs November 29, 1978.—
Decided June 29, 1979.
(Also reported in 280 N.W.2d 270.)

244

For the appellant the cause was submitted on the brief of *James F. Pressentin* and *Berk, Pressentin, Hoida & Berk* of Green Bay.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general.

## PER CURIAM.

This is an appeal from a judgment of conviction for auto theft, contrary to sec. 943.20(1)(a), Stats., and from an order denying the defendant's motion for a new trial. The vehicle in question, a 1972 Chevrolet Blazer, was stolen in Chicago. Defendant was charged with and convicted of intentionally retaining possession of it without the consent of the owner and with intent to deprive him permanently of possession. The case was tried to a jury, which returned a verdict of guilty. The defendant was sentenced to one year in the Brown County Jail. Execution of the sentence has been stayed pending appeal.

An officer in the traffic department of the Brown County Sheriff's Department testified that he observed the 1972 Blazer on June 10, 1975, and decided to stop

it because it had a truck license plate. Normally Blazers, which are multi-purpose vehicles, carry automobile license plates. Automobile plates cost only one-half as much as truck plates. Truck plates are also treated differently at the time of transfer of the vehicle, remaining with it, while autos are transferred without plates. The officer ascertained that the driver of the vehicle, defendant's former wife, Brenda Kreuser, had no registration certificate for the vehicle. He made a registration check to the Department of Motor Vehicles in Madison, and was informed that the license plate belonged to a 1967 Chevrolet truck owned by the defendant. Because the driver could not produce a certificate of registration, the car was impounded and towed to the Brown County Safety Building garage.

At the Brown County Garage, the vehicle was examined by Lieutenant Donald VanStraten, an investigator for the Brown County Sheriff's Traffic Department. He found that the vehicle identification tag on the doorplate was not the original identification tag. He removed the doorplate tag, which proved to be the identification tag for the 1967 Chevrolet truck to which the license plate on the 1972 Blazer was registered. He then contacted the National Automobile Theft Bureau and was told where the hidden vehicle identification number would be located on the frame of a 1972 Blazer. He found that this hidden vehicle identification number was different from the tag on the door, corresponding to the number on a vehicle which was registered to Ted Sutkus of Chicago, Illinois. Lieutenant VanStraten contacted the defendant, who informed VanStraten that he had purchased the vehicle from a man he met in a local bar.

Ted Sutkus, the owner of the Blazer, testified that it was stolen from in front of his home in Chicago on March 12, 1975. Shortly after it was stolen, Luis Echevarria, a friend from work, called Sutkus to report that

he had seen the Blazer on the Kennedy Expressway with a Wisconsin license plate on it. Echevarria, who had copied down the license plate number, gave it to Sutkus. Sutkus called the Chicago police to report the license number.

Echevarria took the stand and testified that he had in fact seen Sutkus' Blazer, which he identified because of his familiarity with the car and because the thief had not removed the bumper stickers from it, and reported the license number to Sutkus. Although he had written the license number down on a newspaper which he had next to him on the seat of his car, he had thrown the newspaper away after calling Sutkus to report the license number, and could no longer remember it. Sutkus also could not remember the license number that Echevarria told him over the telephone.

John Daly, a Chicago police officer, testified that he had been dispatched to interview Sutkus after Sutkus called in to report the license number spotted by Echevarria. Daly's report disclosed that the license number given to him by Sutkus was identical to the number on the license of the car at the time it was stopped by the Brown County Sheriff's officer. Daly's report showed that the day of his interview with Sutkus was March 15, 1975. Daly's testimony was objected to on the ground it was double hearsay.

The defendant took the stand and testified that he met a person named Tony Meyer in the Bottoms-Up Tavern in Green Bay in the middle of March, 1975. Meyer said that he had a 1970 Chevrolet truck body without an engine. Defendant agreed to pay $1,200 for the truck body if the owner of the truck body would install the engine from defendant's 1967 Chevrolet truck in it. Defendant claimed he paid Meyer $400 down and $800 at the completion of the job. He obtained the money from his mother, and produced a photocopy of a cashier's

check dated March 28, 1975, as proof. Defendant testified that he paid the $400 to Tony Meyer on March 29th. At that time Meyer picked up the 1967 Chevrolet truck and drove it away. About two weeks later Meyer brought the Blazer to defendant's house, together with the title and tax form for a 1970 Chevrolet truck. Defendant paid him the $800 balance and noticed that Meyer put the vehicle transfer forms into an envelope addressed to the Wisconsin Department of Motor Vehicles. Meyer represented that he would mail the forms into the Department.

The defendant produced two witnesses who testified that they had seen him in the company of an unknown male in the Bottoms-Up Tavern. The first witness was a car salesman to whom defendant had explained his proposed transaction with Meyer, asking for advice. The salesman advised defendant not to go through with the deal, because he felt that substituting a 1970 truck body for a 1967 truck body would not increase the value of the vehicle by $1,200. The second witness was the man with whom defendant was living at the time. He saw the defendant and a stranger together in the Bottoms-Up Bar, and was also present on the day the stranger delivered the Blazer to defendant. He saw money change hands. He could not recall the exact date when the Blazer was delivered, but thought that it was in the beginning of April, 1975.

During the presentation of the state's case, Lieutenant VanStraten had testified that he found a registration certificate for the defendant's 1967 truck in the glove compartment of the 1972 Blazer. Defendant denied this, claiming that Lieutenant VanStraten came out to defendant's house to interview him, and defendant gave him the registration certificate at that time. VanStraten took the stand in rebuttal to deny plaintiff's testimony,

and testify that he found the title for the 1967 Chevrolet pickup in the glove compartment in the Blazer.

Two issues have been raised on appeal. First, defendant argues that the evidence was insufficient to show he retained the vehicle knowing it had been stolen. Second, defendant contends the trial court erred in allowing Chicago Police Officer Daly to testify from his report, naming the Wisconsin license number which Sutkus told him that Echevarria had reported seeing on the Blazer. No search or seizure issues are raised with respect to the impounding of the vehicle, the removal of the identification tag, or the registration certificate, which VanStraten claimed to have discovered in his search of the glove compartment. No objection at trial was made to any of this evidence, and it appears there was no motion to suppress it.

The purpose of the defendant's testimony was to offer an explanation for his possession of the 1972 Blazer consistent with innocence. The implication defendant intended to convey was that defendant thought the 1972 Blazer which Meyer delivered to him was the 1970 truck body, containing the engine from his 1967 truck, which he had agreed to purchase from Meyer. The testimony of defendant's witnesses tended to corroborate him. However, the jury was not required to accept defendant's version of the conclusion of the transaction with Meyer. The jury might well have found that defendant heeded his first witness's advice and did not agree to purchase the 1970 truck body from Meyer. If so, the transaction seen by the second witness could have been the purchase of a stolen vehicle. The question for the jury was whether defendant retained the vehicle knowing it to be stolen.

The sufficiency of the evidence issue is without merit, because if the jury disbelieved defendant's testimony as

to the conclusion of the transaction with Meyer, there was sufficient evidence to allow an inference beyond a reasonable doubt that he knew that the Blazer was stolen. The license plate registered to defendant's 1967 truck, the altered vehicle identification number and the registration certificate for the 1967 truck all tend to show guilty knowledge. Moreover, there is a permissible inference that the untruth of the defendant's story as to how he acquired the vehicle shows his guilty knowledge that the vehicle was stolen. *Edwards v. State,* 46 Wis.2d 249, 174 N.W.2d 269 (1970). To be sure, this negative inference will not carry the burden of proof beyond a reasonable doubt establishing the element of guilty knowledge. *Peters v. State,* 70 Wis.2d 22, 233 N.W.2d 420 (1975). However, it will support an inference of guilt in combination with other inferences drawn from other facts. Thus, the crucial issue on this appeal is whether the testimony of Officer Daly should have been excluded. As admitted, it established that the license number which Echevarria claimed he saw on the Blazer on the Kennedy Expressway, prior to March 15, 1975, was the license number which was registered to defendant's truck. Because defendant testified that Meyer drove the 1967 truck away on March 29th, ostensibly for the purpose of removing the engine, the fact that the plates had been removed from the 1967 truck and attached to the Blazer two weeks prior to that time destroys the credibility of defendant's story.

The objection to the testimony of Officer Daly is that it is double hearsay. Echevarria told the license number to Sutkus, who told it to the officer. When a double hearsay objection is made, each component of the combined statements must be examined to see if it is objectionable. Sec. 908.05, Stats. Therefore, we must ex-

amine separately the testimony by Officer Daly as to what Sutkus told him, and the included statement by Sutkus as to what Echevarria told him.

Daly's testimony as to the statement made by Sutkus was not hearsay. In order to be subject to a hearsay objection, an out of court statement must be offered in evidence to prove the truth of the matter asserted. Sec. 980.01(3), Stats. Sutkus reported to Daly the license number given him by Echevarria. The fact asserted in the statement was that the report was accurate, that Sutkus was transmitting the same license number which he had received. Sutkus testified to the truth of this fact at the trial, and was subject to meaningful cross-examination on the point. However, he was unable to remember the license number. Daly's testimony was offered for the purpose of showing what statement Sutkus made, not for its truthfulness. In contrast, Sutkus' statement as to what Echevarria told him was hearsay, because it was offered for the truth of the matter asserted, that is, that the Blazer was carrying a certain Wisconsin license plate number.

Echevarria's statement to Sutkus qualified as an exception to the hearsay rule under sec. 908.045(2), Stats., a statement of recent perception. Echevarria made the statement while his recollection was clear. In fact, he testified that he had written the license number down on a newspaper which he threw away some time after he talked to Sutkus. The statement was made in good faith, and not in contemplation of any litigation in which Echevarria had an interest. The event was recently perceived, because Echevarria testified that he talked to Sutkus within a day after seeing the vehicle. The delay was occasioned by the fact that he did not know Sutkus' telephone number, and had to check at work

to find out. Finally, the statement was not made in response to the instigation of a person engaged in investigating, settling or litigating a claim.

In this case we have reached the same conclusion as the New Jersey court did in *Rathbun v. Brancatella,* 93 NJL 222, 107 A 279 (1919). In that case a pedestrian died after being struck by a speeding auto. A bystander, observing the license number of the vehicle, called the number out to another bystander. She reported it to the police within ten or fifteen minutes, and then wrote the license number down. Subsequently, she destroyed the paper upon which the number was written. It was held that the testimony of the first and second observers and the police officer was admissible, not as proof of ownership of the license by the defendant, but to show that the same number was transmitted from each person to the next.

It is important to note that we have not created an additional exception to the hearsay rule for reports made to law enforcement officers, as was apparently done in *United States v. Booz,* 451 F.2d 719 (3rd Cir. 1971). That case seems to have dispensed with the requirement that a recorded recollection must be shown to reflect correctly the knowledge of the eyewitness at the time it was made.

The judgment is affirmed.