Lester W. KLUEVER, by his guardian ad litem, Andrew T. Gonring, and Alice Kluever, Plaintiffs-Respondents,

v.

EVANGELICAL REFORMED IMMANUELS CONGREGATION, now known as Immanuel United Church of Christ, and Insurance Company of North America, a foreign insurance corporation, Defendants-Appellants;†

U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, HEALTH CARE FINANCING ADMINISTRATION, a branch of the U.S. Government, and Blue Cross-Blue Shield United of Wisconsin, a domestic insurance corporation, Defendants.

Court of Appeals

*No. 87–0905. Submitted on briefs December 22, 1987.—Decided March 2, 1988.*

(Also reported in 422 N.W.2d 874.)

† Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Michael K. Scott* of *Davis & Kuelthau, S.C.,* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Andrew T. Gonring* of *O'Meara, Eckert, Pouros & Gonring,* of West Bend.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. Immanuel United Church of Christ appeals from a judgment awarding damages to Lester and Alice Kluever arising out of injuries sustained by Lester Kluever in a fall on the church premises. The major issue on appeal is whether the trial court erred in admitting into evidence a hearsay statement of Lester Kluever relating a brief descrip-

tion of how he fell. Upon review of the record and applicable law, we conclude that the statement was properly admitted as a recent perception under sec. 908.045(2), Stats.

While working as a volunteer painter in the Fellowship Hall of the church on September 6, 1983, Kluever was injured in a fall. Kluever was painting a steam pipe using a stepladder owned by the church. The stepladder was placed over a drop cloth. Two other volunteers heard a thump and then saw Kluever lying flat on the floor. No one observed the fall and it is disputed whether Kluever was on the ladder when he fell.

Following the fall, Kluever was placed in the intensive care unit of St. Joseph's Hospital. Within several hours, Kluever became neurologically impaired. He was then transferred to Froedtert Memorial Lutheran Hospital, where he became obtundent, disoriented and comatose, and was placed on a life support system. Kluever was diagnosed as suffering from occipital skull fractures, subdural hematoma, and right side paralysis.

Seven weeks after the fall on October 25, 1983, Kluever's condition had improved and stabilized and he was transferred to Sacred Heart Rehabilitation Hospital. While at Sacred Heart, Kluever suffered from deficits in orientation, attention span and memory. Functional communication, reception and expression also showed deficits. Kluever also suffered from aphasia (the loss of the ability to articulate ideas in any form), dysphasia (the impairment of speech and verbal communication) and the inability to interpret verbal communication.

Expert testimony revealed that people with injuries such as Kluever's can recall events from the past

and express recollection of those events. This results because such people have "islets of memory," which are short, fairly isolated, but accurate representations of the past.

Evidence indicates that Kluever had bad days on which his memory was unclear. The evidence also showed, however, that Kluever had his "good days." Ellen Prost, Kluever's daughter, testified that she visited Kluever "[m]ost every other day" while he was at Sacred Heart. Prost stated that Kluever was starting to talk more and was having "good days when he was fairly alert." On his good days, Prost testified that Kluever would converse and ask about such things as an insurance bill, whether the yard had been raked, and whether the antifreeze of his car had been checked. On one such occasion, Kluever indicated that he had a can of antifreeze on a shelf in the garage, which upon investigation proved to be true.

While at Sacred Heart, eight to ten weeks after the fall in early or mid-November, 1983, Kluever made the statement at issue here: "I got down from the ladder, something wasn't right, I got back up again, this ladder—out it went." Alice Kluever and Prost were present when Kluever made the statement. Prost then immediately questioned Kluever about the statement, but he shook his head and did not remember.

Prost stated that, just before the statement was made, Kluever recognized her, her mother, and her daughter, and asked where his other two grandchildren were. Prost also stated that Kluever's speech was good that day, and that she could understand him when he said something. Psychological testimony indicates that Kluever has since regressed to a "very primitive, very vegetative level." By means of a

guardian ad litem, he sued the church claiming that it negligently provided him with a ladder and drop cloth unfit for use. The jury assessed negligence at fifty percent for Kluever and fifty percent for the church. It then assessed damages; the church appeals.

The major issue is the trial court's admission of Kluever's statement. It is not disputed that Kluever's statement is hearsay evidence. The trial court admitted Kluever's statement, however, as a recent perception under sec. 908.045(2), Stats.[1]

The church challenges the trial court's determination, arguing that Kluever's statement does not fall within sec. 908.045(2), Stats., because it was not of an event recently perceived, was not made while Kluever's recollection was clear, and was not made in good faith but in contemplation of litigation. It argues that admission of the statement was prejudicial because it was the only direct evidence of what caused Kluever to fall to the floor. We will comment upon each allegation in turn.

■

A decision on the admissibility of a hearsay statement is within the discretion of the trial court. *Christensen v. Economy Fire & Casualty Co.*, 77 Wis.

---

[1]Section 908.045, Stats., provides in relevant part:

Hearsay exceptions; declarant unavailable. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(2) STATEMENT OF RECENT PERCEPTION. A statement, not in response to the instigation of a person engaged in investigating, litigating, or settling a claim, which narrates, describes, or explains an event or condition recently perceived by the declarant, made in good faith, not in contemplation of pending or anticipated litigation in which he was interested, and while his recollection was clear.

812

2d 50, 55, 252 N.W.2d 81, 84 (1977). Such discretion will not be reversed unless it is abused or is premised upon an erroneous view of the law. *Id.*

The church contends that Kluever's statement did not describe a recently perceived event because an eight to ten week "time lapse between perception and narration is too long a delay to satisfy the recency of perception criterion" of sec. 908.045(2), Stats. The church contends that admission of the statement based on this hearsay exception was made under an erroneous view of the law by the trial court.

We disagree. The mere passage of time, while important in a determination of whether the event was recently perceived, is not controlling here. A determination regarding recency of perception depends on the particular circumstances of the case, including whether there were any intervening circumstances, such as injuries, which precluded or limited an earlier statement. *See* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* sec. 804(b)(5)[04], at 199 (1985).

It can be inferred from the record that Kluever's concept of time was an amorphous one considering his condition. The trial court could therefore reason that the fall was "recently perceived" in Kluever's mind. While eight to ten weeks may be an unusual period of time, Kluever's comment is admissible under the recent perception exception which "allow[s] for a considerable passage of time." *Smith v. Hall,* 524 P.2d 684, 689 (Kan. 1974).

The recent perception exception is an outgrowth of the Model Code of Evidence and the Uniform Rules of Evidence. *Weinstein's Evidence* at 193–94. The exception is similar to the present sense impression and excited utterance exceptions, but was intended to

allow more time between the observation of the event and the statement. Comment, *The Recent Perception Exception to the Hearsay Rule: A Justifiable Track Record,* 1985 Wis. L. Rev. 1525, 1534 [hereinafter Comment, *Exception*]. The exception has been rejected by most states because the greater lapse of time the exception allows between the event and the statement of the declarant provides "an opportunity for calculated misstatements and other evidentiary infirmities." *Id.* at 1528.

Wisconsin is among a small number of states, however, that had adopted the recent perception exception, after adding limitations to assure accuracy and trustworthiness. *Judicial Council Committee's Note–1974,* Wis. Stat. Ann. sec. 908.045 (West 1975); *see also Weinstein's Evidence* at 202–03. The exception is based on the premise that probative evidence in the form of a noncontemporaneous, unexcited statement which fails to satisfy the present sense impression or excited utterance exceptions would otherwise be lost if the recently perceived statement of an unavailable declarant is excluded. Comment, *Exception, supra,* at 1533.

The exception's purpose, therefore, is to admit probative evidence which in most cases could not be admitted under other exceptions due to the passage of time, *see id.* at 1543, on the ground that no evidence might otherwise be available, *Weinstein's Evidence* at 197. As such, the exception deals with the problem: "how can a litigant establish his claim or defense if the only witness with knowledge of what occurred is unavailable?" *Id.* at 194.

That is exactly the situation we have here. Absent Kluever's statement, there would be no witness with first-hand knowledge of how the fall occurred. The

trial court, after applying the trustworthiness tests embodied in sec. 908.045(2), Stats., determined that Kluever's statement was probative evidence admissible as a recent perception.

Given the purpose of the recent perception exception and its intention to expand the allowable amount of time between perception and the making of the statement, we cannot conclude that the trial court abused its discretion.

The church argues that even if intervening injuries can extend the time for a recently perceived statement, the injuries did not *preclude* Kluever from making an earlier statement, and thus the statement was not recently perceived. The church points to testimony that Kluever had a lucid interval of several hours following the fall, and also had "good days" while at Sacred Heart in which no statement about the accident was made.

■

After reviewing the record, we disagree. The only evidence adduced was that Kluever had "islets of memory" allowing him to accurately recall isolated past events. There is no testimony that he was capable of recalling the specifics of the accident at any time prior to the date the statement was made. To rule otherwise would be pure conjecture.

The church next contends that Kluever's statement does not satisfy sec. 908.045(2), Stats., because it was not made while Kluever's recollection was clear. After hearing the expert testimony and the testimony of Prost concerning the circumstances under which the statement was made, the trial court concluded that Kluever's recollection was sufficiently clear to allow admission. Indications to the contrary, the trial

court stated, should go to the weight accorded the statement, not its admissibility.

We agree with the trial court that there was a basis to believe that this statement was the result of an accurate "islet of memory"; sufficient indicia of a clear recollection were present to allow admission. Any evidence to the contrary goes to the weight of the evidence. Whether Kluever's recollection is to be denominated as arguable or credible or incredible is to be determined by the jury, not the judge or the appellate court. *State v. Bolstad,* 124 Wis. 2d 576, 591, 370 N.W.2d 257, 264 (1985). To the extent that the church considered Kluever's recollection unclear, the circumstances surrounding the statement were subject to attack by counsel on cross-examination and in closing argument. *See Powell v. State,* 86 Wis. 2d 51, 68, 271 N.W.2d 610, 618 (1978).

The church's final challenge to admission of the statement is that it was not made in "good faith," but in contemplation of litigation in which Kluever was interested. However, the record does not contain, and the church has not directed us to, any evidence which would suggest that the statement was made in contemplation of litigation or that Kluever was even aware of the possibility.

Given Kluever's mental condition and his limited ability to comprehend verbal communication, there is no reason to conclude that Kluever was acting in bad faith or was contemplating litigation. In fact, this action was not commenced until approximately eleven months after Kluever made the statement. In addition, the statement was not made in response to any question or conversation concerning the fall, but was

uttered spontaneously when "all of a sudden [Kluever] started talking." Thus, there is no indication that Kluever had made a studied reflection of the situation.

■

To show bad faith and contemplation of litigation, the church principally relies on the circumstances surrounding the statement[2] and the fact that Alice Kluever and Ellen Prost "stood to benefit in a recovery from any litigation commenced." However, the language of sec. 908.045(2), Stats., places the good faith and interest in litigation of the declarant at issue, not that of the witness recounting the statement. The witnesses' good faith or interest in litigation are adequately addressed through cross-examination at trial and during closing arguments. *See* sec. 906.11(2), Stats.

■

The church next argues that the evidence was insufficient to show that it was causally negligent and claims that Lester Kluever's negligence exceeded the church's negligence as a matter of law. A jury's finding and apportionment of negligence will not be set aside when there is any credible evidence which under any reasonable view supports the verdict, particularly where, as here, the verdict has the approval of the trial court. *Kenwood Equip., Inc. v. Aetna Ins. Co.,* 48 Wis. 2d 472, 478, 180 N.W.2d 750, 754 (1970).

---

[2]The Church alludes to the fact that the statement was first reduced to writing in plaintiff's counsel's office nine months later, that all family members stood to benefit from any recovery, that the statement "conveniently fits" reliability criterion of sec. 908.045(2), Stats., and provides elements of proof needed for this lawsuit.

To support its argument that it was not causally negligent, the church contends that the evidence failed to show Kluever's fall as originating from the ladder or that the fall was due to a defect in the ladder and drop cloth. Our review of the evidence indicates, however, that Kluever was last seen on the ladder ten minutes before the fall. Kluever's statement, made at Sacred Heart, indicated that "something wasn't right" with the ladder and that when he got back up on the ladder, "out it went." In addition, expert medical testimony indicated that injuries of the type Kluever sustained could not usually be caused by someone falling on level ground, as great force is needed to cause fractures of the sort Kluever suffered. From this information the jury could reasonably infer that Kluever fell from the ladder.

Evidence also indicated that the ladder and drop cloth were a substantial factor in causing the fall. In addition to Kluever's statement that "something wasn't right" with the ladder, two experts testified that the ladder and drop cloth combination was unsafe. The first expert testified that the ladder was unsafe because it was warped and twisted, with bowed treads, loose joints and other defects, with the result that "the ladder becomes rickety, teetery, when you get on it," and could move suddenly, surprising someone on it. The second expert provided similar testimony, stating that the ladder was unsafe and that when mounted, it was "quite wiggly [and] flexed around quite a bit," such that "the front legs slipped [and] will slide on the drop cloth." In addition, one expert testified that the church was negligent in providing improper equipment to Kluever and that

the ladder and drop cloth combination would be a "substantial factor" in someone falling off.[3]

Based on this evidence, the jury could reasonably conclude that the church was negligent in the materials it provided to Kluever and apportion fifty percent causal negligence to the church.[4]

*By the Court.*—Judgment affirmed.

[3]In challenging the sufficiency of the evidence, the church frequently contends that Kluever's expert witnesses did not testify to the requisite level of certainty. However, the church did not timely raise that objection at trial. Therefore it is waived. *State v. Wind,* 60 Wis. 2d 267, 273, 208 N.W.2d 357, 361 (1973).

[4]To the church's argument that the jury ignored the evidence adverse to Kluever, we note that the jury also apportioned fifty percent negligence to him.