STATE of Wisconsin, Plaintiff-Respondent,

v.

Peter BALLOS, Defendant-Appellant.†

Court of Appeals

*No. 98–1905–CR. Submitted on briefs July 6, 1999.—Decided September 21, 1999.*

(Also reported in 602 N.W.2d 117.)

†Petition to review denied.

495

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert N. Meyeroff* of *Robert N. Meyeroff, S.C.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Diane M. Welsh*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

Before Fine, Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Peter Ballos appeals from the judgment of conviction, following a jury trial, for arson of building with intent to defraud an insurer, party to a crime, in violation of §§ 943.02(1)(b) and 939.05, STATS. He argues that the trial court erred in declining to conduct an *in camera* inspection of the mental health treatment records of the State's primary witness. He also argues that the trial court erred in admitting transcripts of tape recordings of the 911 calls reporting the fire and connecting him to the crime. We conclude that the trial court erred in not conducting an *in camera* inspection of the mental health records, but

that the error was harmless. We also conclude that the 911 evidence was admissible. Accordingly, we affirm.

## I. BACKGROUND

¶ 2. Ballos and William Jackson-Burnett were charged with the February 25, 1996, arson of the Four Coins Restaurant in Milwaukee. The complaint stated that officers responding to the fire "were informed by the dispatchers that they had received numerous calls indicating that at least one man had run from the building and that the man was on fire and that he had gotten into a car with a possible plate of NFT 543." The investigation established that the man on fire was Jackson-Burnett who, at trial, testified that he ultimately was hospitalized for seven months with third degree burns to approximately seventy percent of his body, as a result of the fire. The investigation also established that license plate NFT 543 was registered to a car owned by Ballos.

¶ 3. The owner of the Four Coins Restaurant, Antonio Chronopoulos, was charged with conspiracy to commit arson, and with insurance fraud, and was prosecuted with Ballos in a consolidated trial. Jackson-Burnett, however, entered into an agreement with the State. In exchange for his truthful testimony regarding the arson, and in consideration of the severe injuries he had suffered in the fire, the State did not pursue its prosecution of him.

¶ 4. At the Ballos/Chronopoulos trial, Jackson-Burnett testified that Ballos told him the owner wanted to remodel the restaurant and had offered him $5,000 to set it on fire. Jackson-Burnett said that he agreed to commit the arson with Ballos, for which he (Jackson-Burnett) would receive $2,500 "about ten

498

days or so after [the arson] when the insurance paid up." Both Ballos and Chronopoulos were convicted.

¶ 5. Ballos based his defense on two theories germane to the issues on appeal. First, he contended that Jackson-Burnett "acted either alone or with [other] persons . . . to satisfy [his] desire . . . to build bombs and burn buildings." In order to pursue that theory in cross-examining Jackson-Burnett, Ballos maintained that he would need Jackson-Burnett's mental health treatment records. In support of the pretrial motion for production of those records, defense counsel's affidavit referred to a police report that stated Jackson-Burnett had received hospital treatment for depression and hostility from November 22 to December 1, 1995, and that Jackson-Burnett's "chief complaint" was that he had been "obsessed with building bombs for about one week," and could not "seem to stop [such] thoughts." Second, Ballos maintained that the numerous 911 calls reporting the fire and license plate number were inadmissible hearsay. Thus, as he contended in his pretrial motions and brief, because "[t]he 911 calls were the basis for police investigation of [him] and search warrants which resulted in the . . . evidence" leading to his arrest, the charge against him should have been dismissed for insufficiency of evidence at the preliminary hearing, and the 911 information and derivative evidence should have been suppressed at trial.

## II. MENTAL HEALTH TREATMENT RECORDS

¶ 6. Ballos first argues that "[u]pon a showing that . . . the main witness against [him] had received mental health treatment and had expressed an obsession with building bombs," the trial court should have granted his request for production of the treatment records for an *in camera* inspection. He contends that

his theory of defense—that Jackson-Burnett acted alone, or with others, to satisfy his desire to burn buildings—would have been strengthened by exposing Jackson-Burnett's mental health problems and challenging his credibility based on the information in those records. Ballos is correct.

¶ 7.   In *State v. Munoz*, 200 Wis. 2d 391, 395, 546 N.W.2d 570, 572 (Ct. App. 1996), we reiterated:

> "To be entitled to an *in camera* inspection, the defendant must make a preliminary showing that the sought-after evidence is material to his or her defense. We review under the clearly erroneous standard the findings of fact made by the trial court in its materiality determination." Whether a defendant has made the required preliminary showing presents a question of law.

(Quoted source omitted.) Clarifying our decision in *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), where we had concluded that "the defendant's burden should be to make a preliminary showing that the sought-after evidence is relevant and *may be helpful* to the defense or is necessary to a fair determination of guilt or innocence," *id.* at 608, 499 N.W.2d at 723 (emphasis added), we explained that a defendant does not satisfy that burden by offering "the mere possibility" that the records contain something that "may be helpful" to the defense. *See Munoz*, 200 Wis. 2d at 397–98, 546 N.W.2d at 572–73. Thus, in *Munoz*, we affirmed the denial of an *in camera* inspection of a sexual assault victim's mental health treatment records in a case where the defendant had asserted that the victim "had acknowledged receiving psychiatric counseling for prior assaults," but had "offered the trial court nothing to suggest that [the victim] suffered from any psychological disorder ren-

500

dering 'reality problems in sexual matters.' " *Id.* at 399, 546 N.W.2d at 573.

¶ 8.   The circumstances of the instant case are quite different. Ballos's showing was specific; it established the necessary connection between his theory of defense and Jackson-Burnett's treatment records. Defense counsel's affidavit accompanying the motion for production of the records advised the trial court of Ballos's contention that Jackson-Burnett "acted either alone or with [other] persons . . . to satisfy [his] desire . . . to build bombs and burn buildings." Counsel provided evidence that Jackson-Burnett had received approximately ten days of hospital treatment for depression and hostility, less than three months before the arson, and that Jackson-Burnett had complained that he had been "obsessed with building bombs for about one week" and could not "seem to stop [such] thoughts." Taken together, the treatment, the timing, and the apparent potential relationship among the subjects of hostility, bomb-building obsession, and arson provided more than "the mere possibility" that Jackson-Burnett's treatment records " 'may be necessary to a fair determination of guilt or innocence.' " *See id.* at 398, 546 N.W.2d at 573. Thus, we conclude that the trial court erred in not granting Ballos's request for an *in camera* inspection of Jackson-Burnett's mental health treatment records.

¶ 9.   We also conclude, however, that the error was harmless. An error is harmless if "there is no reasonable possibility that the error contributed to the conviction." *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 232 (1985). Here, because the jury learned of Jackson-Burnett's mental health problems, and because the evidence of Ballos's guilt was overwhelm-

ing, we conclude that the failure to conduct an *in camera* inspection of Jackson-Burnett's treatment records, even assuming the inspection would have led to Ballos being allowed to utilize or introduce the records at trial, was harmless error. As the State argues:

> Ballos wanted the jury to hear about Jackson-Burnett's mental health problems and that he was obsessed with bombs. The jury heard this. The jury heard, directly from Jackson-Burnett, that he had received mental health counseling prior to the fire; that he had problems with his short-term memory; that he was on several kinds of medications, including anti-depressants; that he had "gestured toward blowing things up . . . in specific, City Hall"; that on one occasion he heard voices; that he has had a hallucination; and that he talks to God.
>
> Ballos simply provides no evidence to show how an *in camera* review of Jackson-Burnett's psychological records would have cast any more doubt on the witness's mental health than that cast by the witness's own testimony about his mental health. In fact, despite Jackson-Burnett's apparent psychological problems, he proved himself to be a credible witness. Jackson-Burnett's version of the arson was consistently corroborated by the physical evidence and testimonial evidence admitted at trial.
>
> For example, Jackson-Burnett testified, in great detail, about how the arson was committed. He testified that Ballos came over to his home and changed clothes before they went to burn the Four Coins Restaurant. The Milwaukee Police recovered Ballos's clothes and wallet from Jackson-Burnett's home.
>
> Jackson-Burnett testified that both he and Ballos were at the restaurant and were responsible for starting the fire. This version is corroborated by

502

overwhelming physical evidence. Witnesses called 9–1–1 to report two men fleeing the scene. Ballos's blood was found on the broken window at the restaurant. Both Jackson-Burnett and Ballos sustained burns from their involvement.

Jackson-Burnett testified that he was on fire when he entered Ballos's car. Witnesses reported seeing a burning man get into a vehicle. The vehicle, based on eyewitness reports of the license number, belonged to Ballos. When the police located Ballos's car, they observed blood stains and burnt flesh inside the car. Blood testing indicated that the blood inside Ballos's car belonged to both Ballos and Jackson-Burnett.

The evidence supporting Jackson-Burnett's version of the arson is overwhelming.

(Record references omitted.) The State's argument is powerful. Ballos offers no reply. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493, 499 (Ct. App. 1979) (unrefuted arguments deemed admitted). The error was harmless.

## III. THE 911 CALLS

¶ 10.  Ballos next argues that the 911 tape recordings and transcripts should not have been admitted at either the preliminary hearing or the trial because they constituted inadmissible hearsay "where the callers were either anonymous or could not be traced by either name or phone number." He contends that the trial court erred in concluding that the 911 calls were "present sense impressions" under § 908.03(1), STATS. He also asserts that their admission violated his Sixth Amendment right of confrontation. Thus, Ballos maintains, without the 911 evidence: (1) at the preliminary hearing, the charge would have been dismissed; and (2) at the trial, no license plate information connecting the

arson to his car could have been introduced and, there-fore, no foundation for the admission of the evidence the police discovered through that license plate lead could have been established.[2] We conclude, however, that the 911 evidence was admissible.

¶ 11.   A defendant's right to confront witnesses is guaranteed by the Confrontation Clause of the Sixth Amendment to the United States Constitution and by Art. I, § 7 of the Wisconsin Constitution. A trial court's decision to admit a hearsay statement is a discretion-ary one, and we will not reverse the trial court's decision "unless the record shows that the ruling was manifestly wrong and an [erroneous exercise] of discre-tion." *See State v. Moats*, 156 Wis. 2d 74, 96, 457 N.W.2d 299, 309 (1990). Whether the admission of hearsay violates a defendant's right of confrontation, however, is an issue subject to *de novo* review. *See generally State v. Webster*, 156 Wis. 2d 510, 517–22, 458 N.W.2d 373, 376–78 (Ct. App. 1990).

¶ 12.   Wisconsin case law has not yet clarified whether, or on what basis, 911 calls, tapes, or tran-scripts may be admissible. Although the precise analysis may vary from case to case or even from call to call depending on the specific facts and circumstances, we see several avenues of admissibility for 911 evi-

---

[2] The fact that we address the merits of Ballos's arguments challenging the admissibility of the 911 evidence does not mean that we accept the implicit premises of his claims. In the first place, a fair trial "in effect cures any error at the preliminary hearing." *See State v. Webb*, 160 Wis. 2d 622, 628, 467 N.W.2d 108, 110 (1991). In the second place, the foundation for the other evidence against Ballos did not necessarily depend on the admissibility of the 911 evidence.

dence, all of which allow for the admission of the 911 evidence in this case.

¶ 13.   First, regardless of whether the declarant is available as a witness, § 908.03(1), STATS., allows for the introduction of 911 evidence under the circumstances presented in this case. It provides for the following hearsay exception:

> PRESENT SENSE IMPRESSION. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

In this case, the trial court admitted the 911 evidence as present sense impressions. The trial court was correct; it is undisputed that the 911 callers were describing the events they were perceiving or had just observed. *See United States v. Bradley*, 145 F.3d 889, 892–94 (7th Cir. 1998) (affirming admission of tape recording of 911 call both as present sense impression and excited utterance); *see also United States v. Hawkins*, 59 F.3d 723, 730 (8th Cir. 1995), *vacated on other grounds*, 516 U.S. 1168 (1996).

¶ 14.   Ballos argues, however, that we should evaluate the 911 calls not as present sense impressions, but as excited utterances under § 908.03(2), STATS., and that the 911 evidence in this case does not qualify. He contends:

> [T]he 911 callers did not call while they were watching the fire but were reporting what they had seen after they allegedly saw the fire. The calls were not made while the declarants were excited; the callers were not spontaneous. The calls were not made while the declarants were under stress caused by the event. The calls were made after the callers had made a conscious decision to call either the fire

department or the police department. The callers who identified the license number engaged in long conversations with the operator involving arguing with the operator as to how much information the operator should take and also making conclusions about the fact that the fire was an arson.

¶ 15. We reject Ballos's argument. Regardless of whether the declarant is available as a witness, § 908.03(2), STATS., may allow for the admissibility of 911 evidence. It provides for the following hearsay exception:

> EXCITED UTTERANCE. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Obviously, suddenly seeing a building on fire is a startling event. Unquestionably, when one promptly calls 911 to report the fire, one often will be "under the stress of excitement caused by the event." Ballos has offered nothing to suggest that the callers delayed their calls or did anything else that somehow reduced or relieved their stress. Although under certain circumstances a trial court may have to analyze additional details to determine whether a 911 call is an excited utterance, here Ballos has offered nothing to explain why, if we evaluate these 911 calls as excited utterances rather than as present sense impressions, we should not consider them to be statements made "under the stress of excitement caused by the event" of the fire. *See Bradley*, 145 F.3d at 892–94 (affirming admission of tape recording of 911 call both as present sense impression and excited utterance).

¶ 16. Additionally, where a declarant is unavailable, as apparently was the case with the 911 callers

here, another hearsay exception applies. Section 908.045(2), STATS., provides:

> STATEMENT OF RECENT PERCEPTION. A statement, not in response to the instigation of a person engaged in investigating, litigating, or settling a claim, which narrates, describes, or explains an event or condition recently perceived by the declarant, made in good faith, not in contemplation of pending or anticipated litigation in which the declarant was interested, and while the declarant's recollection was clear.

The recent perception exception, while "similar to the present sense impression and excited utterance exceptions, [is] intended to allow more time between the observation of the event and the statement." *Kluever v. Evangelical Reformed Immanuels Congregation*, 143 Wis. 2d 806, 813–14, 422 N.W.2d 874, 877 (Ct. App. 1988).

¶ 17. Here, the calls were spontaneous; they were "not in response to the instigation" of the police or anyone else. The callers described "an event or condition recently perceived." By their nature, 911 calls are presumably "made in good faith." *See State v. Williams*, 225 Wis. 2d 159, 176, 591 N.W.2d 823, 831 (1999) ("anonymous caller's use of a[ ] [911] emergency telephone system to report a current and ongoing crime provides . . . sufficient . . . reason to believe that the caller is honest"). The callers were not involved in or anticipating litigation in which they were interested. Coming immediately upon seeing the fire, the callers' recollections were clear. *See State v. Kreuser*, 91 Wis. 2d 242, 250–51, 280 N.W.2d 270, 273 (1979) (witness's report of license plate number, within a day of seeing vehicle, was admissible under § 908.045(2), STATS.).

¶ 18.   Ballos challenges not only the admission of the 911 calls themselves, but the manner in which they were introduced—by transcripts of the 911 tape recordings. He contends that the tapes and transcripts improperly presented multiple levels of hearsay. Again, we disagree. We conclude that, under § 908.05, STATS., and § 908.03(6), STATS., tapes and transcripts of 911 calls are admissible.

¶ 19.   Section 908.05, STATS., states, in part, that "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule." Section 908.03(6), STATS., provides for the following hearsay exception:

> RECORDS OF REGULARLY CONDUCTED ACTIVITY. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances indicate lack of trustworthiness.

Under circumstances assuring the reliability of the records, the § 908.03(6) "business records exception" may include police records. *See State v. Gilles*, 173 Wis. 2d 101, 113–14, 496 N.W.2d 133, 138 (Ct. App. 1992); *see also Abdel v. United States*, 670 F.2d 73, 75 n.3 (7th Cir. 1982) ("[I]n affirming criminal convictions this court has held that where, as here, the author of the document testifies and is subject to cross-examination, public records that are inadmissible under Rule 803(8) [relating to public records and reports] still may be

508

admitted under another hearsay exception, such as Rule 803(6) [relating to business records].").

¶ 20. Ballos does not challenge the authenticity, accuracy, or reliability of the 911 records themselves.[3] Ballos limits his argument to his contention that the callers were unreliable and, therefore, that the admission of their information through the 911 evidence denied him the chance to challenge their credibility. He contends that because all but one of the 911 callers "either chose to remain anonymous or could neither be contacted through a name they gave nor through the telephone number from which they called," they lacked trustworthiness. He claims that "[a] person civic-minded enough to notify the police of an arson would normally be civic-minded enough to provide his name so that he could be of aid in the same matter in the future," and that "[t]o persist in providing a license plate number and then refusing to provide one's name not only lacks the quality of truthfulness, but is also suspicious."

¶ 21. We reject Ballos's claims. We have reviewed the transcripts of the 911 calls in this case. One caller gave his name and phone number; another identified himself as Firefighter Smith. Two callers chose not to identify themselves—one stating, "I'd rather not get myself involved," and the other noting, "this could be a possible arson . . . I would hate to wake up and find my place burned some night." The remaining eight callers were not asked for identification. The

---

[3] Thus, we do not decide whether the "against the state" restriction in § 908.03(8)(c), STATS., applies to prevent the government from introducing § 908.03(8) material *via* § 908.03(6), STATS., or, indeed, whether the 911 tapes fall within § 908.03(8)(c). *See United States v. Oates*, 560 F.2d 45, 63–84 (2d Cir. 1977).

information provided by all the 911 callers proved to be accurate. Nothing, in any of the calls, even hints at a lack of trustworthiness.

¶ 22. Finally, Ballos argues that the admission of the 911 evidence violated his confrontation rights. He is incorrect. Generally, when evidence is admissible under a firmly rooted hearsay exception, the Confrontation Clause has been satisfied, and no further showing of particularized guarantees of trustworthiness is required. *See White v. Illinois*, 502 U.S. 346, 356 (1992); *State v. Jackson*, 187 Wis. 2d 431, 436–37, 523 N.W.2d 126, 129 (Ct. App. 1994). Such evidence may be excluded, however, "if there are unusual circumstances warranting its exclusion." *See State v. Hickman*, 182 Wis. 2d 318, 329, 513 N.W.2d 657, 662 (Ct. App. 1994).

¶ 23. Although there may be debate over whether the present sense impression exception is firmly rooted, *see* MCCORMICK ON EVIDENCE § 298, at 709–11 (Edward W. Cleary ed., 2d ed. 1972); Stanley A. Goldman, *Not So "Firmly Rooted": Exceptions to the Confrontation Clause*, 66 N.C. L. REV. 1, 26–31 (1987), and whether the statement of recent perception exception is firmly rooted, *see Kluever*, 143 Wis. 2d at 813–14, 422 N.W.2d at 877, it is well settled that the excited utterance exception is firmly rooted, *see White*, 502 U.S. at 350 n.1 and 357 (Illinois "spontaneous declaration" exception, identical to Wisconsin "excited utterance" exception, is firmly rooted). Ballos has offered nothing to suggest any "unusual circumstances," *see Hickman*, 182 Wis. 2d at 329, 513 N.W.2d at 662, or "even the slightest taint of unreliability," *see King*, 613 F.2d at 673, that would require exclusion. The 911 evidence was admissible.

*By the Court.*—Judgment affirmed.