| .GUIDRY, J.
The defendant, George Henry Millican, IV, was charged by grand jury indictment with two counts of second degree murder, violations of La. R.S. 14:30.1, and pled not guilty. Following a jury trial on both counts, he was found guilty as charged by unanimous verdict. He was sentenced, on each count, to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence, sentences to be served consecutively. He now appeals, designating one assignment of error. We affirm the convictions and sentences.

FACTS

On November 2, 2001, Travis Carr, the defendant’s cousin, was shot to death at Scotland Square, 1900 Blount Road, Baton Rouge, Louisiana. The State’s expert, Patrick Lane opined that the caliber of the gun used was in the range of .40-.41 caliber, stating, “which is not a caliber that we see real often.” Expert forensic scientist Dr. Michael Crammer testified that Carr suffered .41 caliber gunshot wounds to his left front chest, his right temple, his right shoulder (a grazing wound), and his left neck. Stippling around the wounds indicated the shots were fired from a distance of no more than two feet away. Additionally, three bullet holes and one impact mark were found on walls in close proximity to Carr’s body. No guns were found in the apartment, and no evidence in the apartment suggested that shots were fired from any weapon other than the murder weapon. Indeau Wilson, Carr’s live-in girlfriend of three years, testified that, to her knowledge, Carr did not have a gun.
On November 9, 2001, Antonio Wright, also a cousin of the defendant, was shot to death with what Dr. Crammer opined to be an assault rifle at the Cracker Barrel on Government Street. Wright suffered gunshot wounds to the left side of his back and abdomen, his right arm, which was believed to be a continuation of the gunshot wound from his left back, and his right buttock. Margaret Brown, a cashier *213 at the store, saw the defendant exit a black Toyota Camry, lift what she | described as a large assault rifle, and shoot Wright in an unprovoked killing. Additionally, Jonathan Deshotels, who viewed the shooting from across the street, testified that he saw the defendant stand over the victim after he fell and fire at him from a distance of no more than four feet away. The defendant fired eight times and five shell casings were recovered from the crime scene. All of the shell casings were fired from the defendant’s father’s SKS assault rifle. A .32 caliber gun was recovered from Wright’s waistband. The evidence at the Wright shooting indicated Wright had a beer and cigars in his hands when he was shot.
The defendant confessed to killing Carr with a .44 caliber gun, but claimed he acted in self-defense after Carr retrieved a .38 caliber gun and fired at him. The defendant admitted that he fled from the scene of the Carr killing in his mother’s black Toyota Camry with a Southern University license plate. He claimed he took Carr’s alleged weapon with him and gave the weapon to Antonio Wright.
The defendant also confessed to the Wright killing, but again claimed he acted in self-defense after Wright came up behind him at the Cracker Barrel with a .25 caliber gun in his hand and attempted to shoot him. The defendant stated he had driven Wright to the Cracker Barrel in his mother’s black 2000 Toyota Camry. The defendant claimed he fired an SKS assault rifle at Wright from inside the Camry. Linda Wright, Wright’s mother, testified that the defendant left with Wright in a black Camry with Southern University license plate number 8992 on the night before Wright’s killing.

HEARSAY

In his sole assignment of error, the defendant contends the trial court erred in admitting into evidence, over the hearsay objection of the defense, a 911 tape. He argues a 911 tape is not excluded from the hearsay rule on the basis that it is a public record, citing La. C.E. art. 803. He further argues that the tape may have been admissible into evidence under the excited utterance exception to the hearsay rule, but the trial court failed to conduct the analysis required to reach that determination.
| ¿The issue of the admissibility of the 911 tape under La. C.E. art. 803(8)(a)(i) is res nova for this court.
The jurisprudence on this issue is not totally consistent. See, e.g., State v. Brown, 02-1217 (La.App. 4th Cir.5/28/03), 853 So.2d 8, 14 (court concludes it was error to admit a 911 tape, stating it was clearly hearsay, but further concludes it was harmless error); compare U.S. v. Bradley, 145 F.3d 889, 892-94 (7th Cir.1998) (court concludes 911 tape was neither confusing nor prejudicial, holding defendant’s challenges on those grounds were insufficient to justify its exclusion); Bemis v. Edwards, 45 F.3d 1369, 1372 (9th Cir.1995) (911 tapes admissible as either a public record or a business record, but because citizens making such calls are not under a duty to report, the statements on tapes must also satisfy a separate hearsay exception, such as present sense impression or excited utterance); U.S. v. Sallins, 993 F.2d 344, 347-48 (3rd Cir.1993) (even if the 911 record itself is admissible under Federal Rule 803(8), details as to the out-of-court statements made by the person who called 911 were not admissible unless covered by a separate hearsay exception); State v. Bollos, 230 Wis.2d 495, 505-07, 602 N.W.2d 117, 122-23 (App.9/21/99), review denied, 233 Wis.2d 84, 609 N.W.2d 473 (Wis.2/22/00) (911 tapes reporting fire and arson admissible as present sense impres *214 sions, excited utterances, or statements of recent perception exceptions to hearsay); State v. Parker, 1997 WL 195922 p. 5, 1997 WL 195922 (Tenn.Crim.App.4/23/97) (admission of a 911 tape as a public record was error, even though the contents of the tape qualified as an excited utterance, because the voices on the tape were not identified); State v. Smith, 868 S.W.2d 561, 576-77 (Tenn.1998) (affirms admission of 911 tape under excited utterance exception to the hearsay rule).
Initially, we note the 911 tape recording was not offered into evidence under La. C.E. art. 803(2), the excited utterance exception to the hearsay rule, and thus the trial court had no reason to consider whether the tape was admissible under that provision. Hearsay is a statement, other than one made by the declarant while |Ktestifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay is not admissible except as otherwise provided by the Louisiana Code of Evidence or other legislation. La. C.E. art. 802.
Louisiana Code of Evidence article 803, in pertinent part, provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
(8) Public records and reports, (a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth:
(i) Its regularly conducted and regularly recorded activities;
(ii) Matters observed pursuant to duty imposed by law and as to which there was a duty to report; or
* * *
(b) Except as specifically provided otherwise by legislation, the following are excluded from this exception to the hearsay rule:
(i) Investigative reports by police and other law enforcement personnel.
(ii) Investigative reports prepared by or for any government, public office, or public agency when offered by that or any other government, public office, or public agency in a case in which it is a party.
(iii) Factual findings offered by the prosecution in a criminal case.
'(iv) Factual findings resulting from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based or an investigation into a similar occurrence or occurrences.
At trial, the State presented testimony from Terrie Jenkins, East Baton Rouge Parish E.M.S. 911 Custodian of Tapes. Jenkins was the custodian of exhibit S-50, the 911 tape recording at issue. The defense objected to admitting the 911 tape recording into evidence, arguing that the 911 tape recording contained hearsay and was violative of the defendant’s confrontation rights. The State contended the tape was a public record and Jenkins was its custodian. The trial court overruled the defense objection and the 911 tape recording was played for the jury.
The 911 tape recording contained a telephone call from an unidentified caller at Scotland Square Apartments. The caller reported getting the license plate number of a car that “took off’ approximately thirty minutes earlier. The caller | ^described the vehicle as a dark vehicle, either black or blue, with Southern University license plate number 8992, and responded affirma *215 tively when asked if the car had left from the house “where the shot came from.” The 911 tape recording also included a telephone call to 911 from Indeau Wilson, Wilson gave her address as 1900 Blount Road, apartment 104, and stated she had found her boyfriend dead at the apartment. She indicated her boyfriend had been shot in the back.
The content of the 911 tape was hearsay within hearsay. In order for the contents of the 911 tape recording to be admissible, it must satisfy an exception to the hearsay rule. See La. C.E. art. 805. The exception cited by the State, La. C.E. art. 803(8)(a)(i), is not applicable because the statements on the 911 tape recording in question are those of an unidentified caller and Ms. Wilson, which implicate the defendant’s constitutional right to confrontation, rather than regularly recorded activity of the public agency, to which our law ascribes trustworthiness. Furthermore, La. C.E. art. 803(8)(a)(ii) is inapplicable because the State failed to show that the unidentified caller and Ms. Wilson were under a “duty to report[.j” See Bemis at 1372. Based on the record before us, the State has not shown that the contents of the 911 tape recording meet an exception to the hearsay rule. Therefore, the trial court erred in allowing the tape to be played for the jury.
However, confrontation errors are subject to a harmless-error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The correct inquiry is whether the reviewing court, assuming that the damaging potential of cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438. Factors to be considered by the reviewing court include “the importance of the witnesses] testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination 17otherwise permitted, and, of course, the overall strength of the prosecution’s case.” Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438; State v. Wills, 559 So.2d 1321, 1332 (La.1990). The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); State v. Broadway, 96-2659, p. 24 (La.10/19/99), 753 So.2d 801, 817, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000).
Error in admitting the 911 tape recording was harmless in this case. The defendant confessed to shooting Carr and admitted leaving the scene in his mother’s black Toyota Camry, which had the Southern University license plate. The portion of the 911 tape that incriminated the defendant, i.e., the portion concerning the vehicle with the Southern University license plate leaving the scene of the Carr killing added no additional information to what he had already admitted. The vehicle was also linked to the defendant by his reference to the vehicle in his confession to the Wright killing, as well as by testimony at trial from Linda Wright, the victim’s mother, and Brown. Further, the State’s cases against the defendant were strong. The defendant confessed to both shootings. Additionally, Brown identified the defendant as the shooter at the Cracker Barrel.
This assignment of error is without merit.
CONVICTIONS AND SENTENCES AFFIRMED.