STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael A. SVEUM, Defendant-Appellant.†

Court of Appeals

*No. 97–2185–CR. Submitted on briefs March 9, 1998.—Decided May 7, 1998.*

(Also reported in 584 N.W.2d 137.)

†Petition to review denied.

397

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert T. Ruth* of *Ruth Law Offices* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

Before Eich, C.J., Dykman, P.J., and Roggensack, J.

DYKMAN, P.J. Michael Sveum appeals from a judgment convicting him of stalking, contrary to § 940.32(2) and (2m), STATS., harassment, contrary to § 947.013(1m)(b) and (1r), STATS., violating a harassment injunction, contrary to § 813.125(7), STATS., and criminal damage to property, contrary to § 943.01(1), STATS. He argues that he is entitled to a new trial on all counts because the trial court improperly denied the admission of exculpatory testimony. We conclude that the trial court properly exercised its discretion in ruling that the evidence was inadmissible hearsay. Sveum also argues that the evidence was insufficient to sup-

port the stalking and harassment convictions. We conclude that the evidence was sufficient to support the convictions. Accordingly, we affirm.

## BACKGROUND

Sveum was charged with stalking and harassing Jamie Johnson, his former girlfriend, from April 16, 1996, until about April 29, 1996. He was also charged with violating a harassment injunction for contacting her personally and by telephone during this period. In addition, he was charged with criminal damage to property for damaging the automobile of Kurt Zweifel on April 16, 1996.

Johnson testified that she met Sveum at Zimbrick Buick in 1990, when they both worked there. They started dating in July 1991, and moved in together in September of that year. In July 1994, Johnson ended the relationship. She moved out of their shared living quarters and into an apartment on Carling Drive.

In the months after their breakup, Johnson saw Sveum several times wandering around her car and looking inside of it with a flashlight. In August 1994, Johnson bought a new car at Zimbrick Saturn because she knew that Sveum had a key to her old car. Johnson had the locks to her new Saturn changed after the dealership made Sveum a key for the car.

Johnson testified that on October 15, 1994, she went to a football game with Craig Swenson. After they arrived back at Johnson's apartment at 3:00 a.m., Johnson's door buzzer went off. Johnson looked out the window and saw Sveum standing outside. The buzzer continued to go off for a while more, and approximately fifteen minutes later the phone started to ring. Sveum left a message on Johnson's answering machine, stating that he knew someone was in the apartment and

that if she did not pick up the phone and talk to him, she would be sorry.

Johnson testified that she went to her sister Lynn's house on October 16, 1994, and returned to her apartment at approximately 11:00 or 11:15 p.m. When Johnson entered her security-locked building, Sveum was inside. Johnson tried to run, but Sveum grabbed her and took her keys from her. He threatened to ruin her future relationships and stated that one day he might be hiding in the bushes and blow her head off. He eventually returned the keys to her and left.

The next day, October 17, 1994, Sveum telephoned Johnson twice at work around 8:00 a.m., but Johnson hung up. Johnson then went to court to get a temporary restraining order against Sveum. Later that night, Johnson saw Sveum looking inside her car with a flashlight. She called 911. After the police arrived, Johnson went outside and noticed that she had a flat tire.

On October 24, 1994, Johnson received an injunction ordering Sveum to avoid her residence and avoid contact with her. The injunction was to remain in effect until April 24, 1995.

From October 16, 1994, to November 29, 1994, Johnson continued to receive hang-up telephone calls, so she had her telephone number changed to an unpublished number. She continued to receive hang-up telephone calls after she changed the number.

Johnson testified that she moved from Carling Drive to Timberlake Trails on July 15, 1995. On August 26, 1995, she encountered Sveum at the Branch Street Retreat in Middleton. Sveum told her what her credit card balances were, what day she had moved, where she had been earlier in the week, and what she would do at night after she got home. He also told her that he had a couple pictures that she had thrown away

into the garbage dumpster. He told her that she would not have a relationship as long as he could help it. When police searched Sveum's apartment on May 2, 1996, they found a piece of paper containing Johnson's social security number as well as information about her credit cards, Tyme card, and checking and savings account. They also found pictures of Johnson that Johnson testified she had thrown away.

On October 13, 1995, Johnson had a date with Gary Mobley. After they returned to her apartment, her phone started ringing, but the caller would hang up. Then her door buzzer would buzz, but nobody would be there. She subsequently realized that somebody had damaged Mobley's car. On October 25, 1995, Johnson received a second injunction ordering Sveum to avoid contacting her, her sister or her parents.

On April 16, 1996, Johnson went on a date with Kurt Zweifel, and they returned to her apartment at around 9:30 p.m. After their arrival, Johnson's telephone rang on five different occasions, but on each occasion the caller would hang up. After Zweifel had been in the apartment for approximately fifteen minutes, Johnson informed him that he should leave. Zweifel subsequently noticed what appeared to be a key scratch along the side of his car that had not been there before. After receiving the telephone calls, Johnson was very afraid because she though that Sveum would hurt her.

On April 22, 1996, Johnson received a telephone call from Renee Walls, who was a friend of Sveum. Walls testified that she told Johnson about a conversation she had with Sveum on April 16th or 17th. Sveum told Walls that he knew of Johnson's dates with

Mobley, Swenson and Zweifel and that he had damaged each of their vehicles. Sveum also told Walls that he called Johnson's apartment the night of April 16 from a pay phone, and that he had used the pay phone several times before to call Johnson when she was on a date. Sveum said that he staked out Johnson's apartment almost every night and would check the mileage on her car. He told Walls that after Johnson changed her phone number, he dialed about one thousand telephone numbers sequentially, starting with the number of a friend who had just received a new phone number, until he reached Johnson's answering machine. Sveum said that he was going to prevent Johnson from having a relationship until she was thirty-years old, at which time Johnson would realize that there was no one else for her except him. After her conversation with Walls, Johnson called Detective Mary Ricksecker of the Madison Police Department.

Johnson testified as to her whereabouts from April 26, 1996, to April 29, 1996. On April 26, 1996, Johnson stayed home and watched television. On April 27, 1996, she went to a wedding. She returned home later that afternoon to pick up a friend to take to the reception, and she left again at approximately 6:00 p.m. She returned home at around 2:30 a.m. On April 28, 1996, she went to her parents' home around 11:30 a.m., and then went to her sister's house at approximately 6:30 to 6:45 p.m. She returned home at approximately 8:30 to 9:00 p.m. On April 29, 1996, Johnson drove to school at MATC after work. She was at school from approximately 5:00 to 7:00 p.m.

Walls testified that on April 30, 1996, she again talked to Sveum. Sveum told her that he observed Johnson watching television on April 26. He told her that Johnson was not home on April 27 at approxi-

402

mately 2:00 p.m., 8:00 p.m., or 2:00 a.m. the next morning, but that she arrived home at approximately 2:45 a.m. Sveum checked Johnson's mileage at approximately 8:00 a.m. on April 28, and then went home. At approximately 7:00 p.m., Sveum went back and found Johnson at her sister's house. Johnson's car was still at her sister's house at 8:00 p.m. Sveum told Walls that Johnson went to school on April 29. Sveum further told Walls that on April 30, he intended to buy a car and then go by Johnson's apartment around 8:00 p.m.

Detective Ricksecker testified that on April 30, 1996, she attempted to follow Sveum to see if he attempted any contact with Johnson. Ricksecker was in a red Lumina at the time. That night, Ricksecker was driving near Johnson's residence when she saw Sveum sitting in a black Buick in a parking lot. When Ricksecker later returned to Sveum's vehicle, it was unoccupied. She later saw Sveum walking in the area.

Walls testified that on May 1, 1996, Sveum told her that he had been sitting in his car by Johnson's apartment when he saw Johnson come home with somebody. Then a red Lumina pulled in front of him, and someone got out and wrote down his license plate number. He got out of his car and ran, taking his binoculars with him. He then crawled between the apartment buildings and used the binoculars to look into Johnson's apartment. After Sveum saw a squad car, he ran to PDQ, where his sister and her boyfriend picked him up.

On May 2, 1996, police searched Sveum's apartment and found a 1996 calendar. Numbers written on several dates on the calendar closely coincide with what the odometer readings for Johnson's car may have been on those dates. In addition, the markings on several dates on the calendar coincide with where

Johnson was or who she was with on those dates. On April 16, the day of Johnson's date with Kurt Zweifel, was written "KZ" and "9:30." On April 17, a day on which Johnson testified she went to her sister's house and then to Dairy Queen, was written "At Lynn's," "8:15," and "Dairy Queen." "2:40" was printed on April 27, and "At Lynn's" and "7 p." were printed on April 28. On April 29, a day on which Johnson went to school, was printed "A Sch." The word "Set-up?" was printed on April 30, the day that Sveum encountered Detective Ricksecker's red Lumina. In addition, pieces of paper containing personal information about Zweifel, Swenson and Mobley were found in Sveum's dresser drawers.

The jury convicted Sveum on all counts. He appeals.

## HEARSAY

Sveum presented several alibi witnesses to try to prove that he was somewhere other than at Johnson's apartment on April 16, 1996. Witnesses testified that on April 16, Sveum and his roommate, Jeremy Gempeler, went to Jefferson to pick up a motorcycle. They then brought it back to Madison, where Gempeler sold it to James Bowers. Bowers testified that Sveum and Gempeler left his house at around 9:30 p.m. Gempeler testified that he and Sveum arrived back at their apartment at about 9:15 or 9:30 p.m. Sveum left shortly after they got back.

Sveum also attempted to establish his whereabouts after he left his apartment. Terrance Schoepp testified that on one night in April 1996, he asked Sveum to come over to his residence to help him. Schoepp could not remember the exact date on which Sveum came over. Defense counsel then asked him:

Q: . . . The day he came out to help you, where had he been to the best of your knowledge?

A: I had called him earlier in the afternoon, and he said—

The State then objected on hearsay grounds. In an offer of proof outside the presence of the jury, Schoepp testified that on the day Sveum came over to his house, Sveum said that he was "supposed to pick up a motorcycle with [his] roommate," and that he "probably can make it out after that." The trial court ruled that the evidence was inadmissible because the defendant was attempting to admit his own statement through a third party and because the statement was offered to prove the truth of the matter asserted. Sveum contends that the trial court erred in its ruling.

"A trial court possesses wide discretion in determining whether to admit or exclude evidence, and we will reverse such determinations only upon an erroneous exercise of that discretion." *State v. Evans*, 187 Wis. 2d 66, 77, 522 N.W.2d 554, 557 (Ct. App. 1994). "The trial court properly exercises its discretion if its determination is made according to accepted legal standards and if it is in accordance with the facts on the record." *Id.* When the court bases its discretionary choice on an erroneous view of the law, it has exceeded its discretion. *See State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968).

Sveum contends that Schoepp's testimony was not hearsay because it was not offered to prove the truth of the matter asserted. Sveum argues that he did not offer this statement to prove that he picked up a motorcycle with his roommate. Rather, the statement was offered to prove that Sveum went to Schoepp's house on April

16, 1996, the same date on which he picked up the motorcycle in Jefferson.

Section 908.01(3), STATS., defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." We agree with the trial court that Schoepp's testimony was hearsay under this definition. In fact, the testimony has probative value only if it proves the truth of the matter asserted: that Sveum picked up a motorcycle the day that he visited Schoepp. If Schoepp's testimony did not prove that Sveum picked up a motorcycle before visiting him, then his testimony would have no tendency to prove that Sveum's visit occurred on April 16, 1996. Although the testimony was ultimately offered to prove that Sveum visited Schoepp on April 16, it would not prove that fact unless it first proved that Sveum picked up a motorcycle that same day. Because Schoepp's testimony was offered to prove the truth of the matter asserted, we conclude that the trial court properly exercised its discretion in excluding the testimony.

Sveum also argues that Schoepp's testimony was admissible under § 908.03(3), STATS., which provides an exception to the hearsay rule for then existing mental, emotional or physical conditions.[1] The State

---

[1] Section 908.03(3), STATS., states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(3) THEN EXISTING MENTAL, EMOTIONAL, OR PHYSICAL CONDITION. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

argues that Sveum waived this argument by not presenting it before the trial court. In support of its argument, the State cites *State v. Boehm*, 127 Wis. 2d 351, 357, 379 N.W.2d 874, 877 (Ct. App. 1985), which states that "[w]e will not overturn a discretionary ruling on a ground not brought to the trial court's attention."

Sveum argues that he indeed did argue that the testimony was admissible under § 908.03(3), STATS. In his argument before the trial court, defense counsel stated:

> I'm offering it under 908.01(3). This is not hearsay. I'm not offering it to prove the truth of the matter asserted. I'm offering it—Mr. Schoepp, I believe his statement is going to be whatever night it was that he came out there, it was the night that he said something to the effect I have to go get the motorcycle. So he's connecting up—I'm only proving up that Mr. Schoepp had a visit from Mr. Sveum on a night in which Mr. Sveum said something about a cycle. I am not offering it to prove that in fact Mr. Sveum bought the cycle that night. But it does connect it up, and it would be admissible because I'm not offering it to prove the truth of the matter asserted, which would be I went and bought the cycle that day.

The assistant district attorney rebutted: "I'm not disagreeing with the fact that it wasn't his own client's statement under 908.03(3). The statement of a person's intent is not a form of hearsay. I agree with that, but that's not the issue. . . ."

Sveum argues that it was clear to the district attorney that he was arguing that the statement was admissible under § 908.03(3), STATS. He contends that when the court reporter transcribed the defense coun-

sel's argument, "I'm offering it under 908.01(3)," either the court reporter erred in the transcription or defense counsel mistakenly cited the wrong statutory section.

We disagree with Sveum's contention because it appears clear to us that Sveum was offering his argument under § 908.01(3), STATS., not § 908.03(3), STATS. The transcript shows that Sveum's counsel stated, "I'm offering it under 908.01(3)," which defines "hearsay" as an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Sveum's counsel went on to argue:

> I'm not offering it to prove the truth of the matter asserted. . . . I am not offering it to prove that in fact Mr. Sveum bought the cycle that night. . . . [I]t would be admissible because I'm not offering it to prove the truth of the matter asserted, which would be I went and bought the cycle that day.

■

Contrary to Sveum's argument, his counsel clearly argued that the testimony was not hearsay under § 908.01(3), STATS., because it was not offered to prove the truth of the matter asserted. Sveum's counsel did not offer any argument that the testimony was admissible as a statement of intent under § 908.03(3), STATS. Because Sveum did not argue for the admission of Schoepp's testimony under § 908.03(3), we will not overturn the trial court's decision to deny the admission of the testimony. *See Boehm*, 127 Wis. 2d at 357, 379 N.W.2d at 877.

## SUFFICIENCY OF THE EVIDENCE

■

Sveum also argues that the evidence was insufficient to support the harassment and stalking

convictions. When a defendant challenges the sufficiency of the evidence, we must determine whether the evidence, viewed in the light most favorable to the verdict, is so insufficient in probative value and force that as a matter of law no reasonable jury could have found guilt beyond a reasonable doubt. *See State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990).

> If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.* at 507, 451 N.W.2d at 758. We will review Sveum's arguments regarding each of the contested convictions in turn.

### Harassment Conviction

Sveum was convicted of harassment under § 947.013(1m)(b) and (1r), STATS. Paragraph (1m)(b) penalizes "[w]hoever, with intent to harass or intimidate another person, . . . [e]ngages in a course of conduct or repeatedly commits acts which harass or intimidate the person and which serve no legitimate purpose." Paragraph (1r) increases the penalty to a Class A misdemeanor when the following occur:

> (a) The act is accompanied by a credible threat that places the victim in reasonable fear of death or great bodily harm.
> (b) The act occurs while the actor is subject to an order or injunction under s. 813.12, 813.122 or 813.125 that prohibits or limits his or her contact with the victim.

Sveum contends that the evidence was insufficient to prove that "[t]he act [was] accompanied by a credible threat." The only threats alleged in this case occurred on October 16, 1994, when Sveum, among other things, threatened to "blow [Johnson's] head off." The harassing conduct at issue, on the other hand, did not occur until April 16, 1996, and afterwards. Sveum argues that the acts were not accompanied by the threats because they did not occur at about the same time.

The resolution of this issue turns on the definition of "accompanied." This presents a question of statutory interpretation, which we review *de novo*. *See State v. Mata*, 199 Wis. 2d 315, 319, 544 N.W.2d 578, 579 (Ct. App. 1996). When engaging in statutory interpretation, we start with the language of the statute. *Id.* If the language is clear and unambiguous, we do not look to extrinsic aids. *Id.*

Both parties agree that we should look to a dictionary to ascertain the common and approved meaning of "accompanied." *See State v. Gilbert*, 115 Wis. 2d 371, 377–78, 340 N.W.2d 511, 515 (1983). The dictionary defines "accompany" as "to exist or occur in conjunction or association with." WEBSTER'S THIRD NEW INT'L DICTIONARY 12 (1993). Sveum argues that "accompany" unambiguously means "occur in association with," or "occur at about the same time." In the alternative, Sveum argues that "accompany" is ambiguous in that it can mean either "exist in association with" or "occur in association with." If we conclude that the word is ambiguous, Sveum argues that we should apply the "rule of lenity" and narrowly construe the statute in his favor. *See State v. Richard Knutson, Inc.*, 196 Wis. 2d 86, 96–97, 537 N.W.2d 420, 423 (Ct. App. 1995).

410

We conclude that the dictionary unambiguously means what it says: that "accompany" means "to exist or occur in conjunction or association with." The inclusion of both the words "exist" and "occur" in the definition of "accompany" does not make the word ambiguous. The dictionary does not use "to exist in association with" and "to occur in association with" as mutually exclusive definitions. Rather, they are part of the same definition. Using the common and approved meaning of "accompany," we conclude that Sveum's acts were accompanied by his threats if the threats occurred or existed in association with the acts.

Sveum does not argue that the threats of October 16, 1994, did not exist at the time of the harassing acts alleged in the complaint. Johnson testified that after she received the hang-up calls on April 16, 1996, she was very afraid that Sveum would hurt her. Based on Johnson's reaction to the phone calls, a reasonable jury could find that Sveum's threats still caused Johnson to fear death or great bodily harm as of April 16, 1996. Therefore, a reasonable jury could find that the threats still existed in Johnson's mind at the time that the harassing acts occurred.

### Stalking Conviction

Sveum also challenges the sufficiency of the evidence to support the stalking conviction. Sveum was convicted of stalking under § 940.32, STATS., which provides in relevant part:

> (2) Whoever meets all of the following criteria is guilty of [stalking]:
> (a) The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily

411

injury to himself or herself or a member of his or her immediate family or to fear the death of himself or herself or a member of his or her immediate family.

(b) The actor has knowledge or should have knowledge that the specific person will be placed in reasonable fear of bodily injury to himself or herself or a member of his or her immediate family or will be placed in reasonable fear of the death of himself or herself or a member of his or her immediate family.

(c) The actor's acts induce fear in the specific person of bodily injury to himself or herself or a member of his or her immediate family or induce fear in the specific person of the death of himself or herself or a member of his or her immediate family.

The statute defines "course of conduct" as "repeatedly maintaining a visual or physical proximity to a person." Section 940.32(1)(a). "Repeatedly" means "on 2 or more calendar days." Section 940.32(1)(d).

Sveum first argues that the State needed to prove that he threatened Johnson during the relevant time period. We summarily reject this argument because § 940.32, STATS., does not require that the defendant threaten the victim.

Sveum next contends that the State failed to prove that he maintained a visual or physical proximity to Johnson on two or more days. But, as Sveum concedes in his brief, the State offered evidence that Sveum watched Johnson go to Dairy Queen on April 17, 1996, observed her watch television at her apartment on April 26, saw that she was at her sister's house on April 28, and watched her go to school on April 29. A reasonable jury could conclude, based on this evidence, that Sveum maintained a visual or physical proximity to Johnson on two or more calendar days.

Finally, Sveum argues that the State needed to prove that Johnson was personally aware of his acts and that his acts induced fear in Johnson. Sveum appears to argue that the victim's knowledge of one act that induced fear in the victim is insufficient. Rather, Sveum argues that the victim must have been aware of the actor's course of conduct and that the course of conduct, not just a single act, must cause the victim's fear.

Section 940.32(2)(c), STATS., does not state that the actor's "course of conduct" must induce fear in the victim. Rather, this section requires that "[t]he actor's *acts* induce fear in the [victim]." (Emphasis added.) When the legislature uses different terms in a statute, we presume that it intended the terms to have different meanings. *Johnson v. City of Edgerton*, 207 Wis. 2d 343, 351, 558 N.W.2d 653, 656 (Ct. App. 1996). Accordingly, we presume that the actor's "acts" are not equivalent to the actor's "course of conduct."

As a general rule of statutory construction, "[t]he singular includes the plural, and the plural includes the singular." Section 990.001(1), STATS. Therefore, "acts" as used in § 940.32, STATS., refers to a single act as well as multiple acts. Because the plural "acts" also includes the singular, we conclude that the evidence is sufficient to support a stalking conviction if the victim's knowledge of one of the actor's acts induces fear in the victim.

Johnson received several hang-up telephone calls on April 16, 1996. Sveum told Walls that he made the calls, and Walls relayed this information to Johnson. When asked how the phone calls made her feel, John-

son testified: "Scared. It was happening again." She also testified that she "was very afraid" that Sveum would hurt her. Based on this evidence, a reasonable jury could conclude that Johnson knew that Sveum placed the phone calls and that the calls induced fear in Johnson. Accordingly, we conclude that the evidence was sufficient to support Sveum's stalking conviction.

*By the Court.*—Judgment affirmed.