STATE of Wisconsin, Plaintiff-Respondent,

v.

Antwan B. MANUEL, Defendant-Appellant.†

Court of Appeals

*No. 03–0113–CR. Submitted on briefs September 8, 2003.— Decided May 27, 2004.*

2004 WI App 111

(Also reported in 685 N.W.2d 525.)

146

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven D. Phillips*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jennifer E. Nashold*, assistant attórney general, and *Peggy A. Lautenschlager*, attorney general.

Before Deininger, P.J., Vergeront and Lundsten, JJ.

¶ 1. DEININGER, P.J. Antwan Manuel appeals a judgment of conviction for attempted first-degree intentional homicide, aggravated battery and several related offenses. He also appeals an order denying his motion for postconviction relief. Manuel claims that: (1) the trial court erroneously exercised its discretion in admitting certain hearsay evidence under the "recent perception" exception, WIS. STAT. § 908.045(2) (2001–02);[1] (2) the admission of this evidence violated Manuel's constitutional right of confrontation; and (3) Manuel's trial counsel provided ineffective assistance by failing to impeach the hearsay declarant's credibility by introducing evidence of his prior convictions. We reject each of Manuel's arguments and affirm the appealed judgment and order.

## BACKGROUND

¶ 2. Evidence produced at trial revealed the following facts. A man, standing between the sidewalk and curb with a group of other men, flagged down a car as it drove past. He then approached the car and began conversing with the driver through the front, driver's side window. As they talked, a different man walked up to the vehicle, reached around the man standing at the window, and shot the driver in the neck. The driver

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

survived and later identified Derrick Stamps as the man who spoke to him and Manuel as the man who shot him.

¶ 3. The police arrested Stamps two days later at his girlfriend's apartment. At the time of Stamps' arrest, his girlfriend told a detective that Stamps told her on the night of the shooting that "he was with the guy that shot" the driver, and Stamps had then taken her and their son to a hotel for two days. Stamps refused to testify at Manuel's trial, invoking his Fifth Amendment privilege. Manuel sought to prevent Stamps' girlfriend from testifying on the grounds that she lacked personal knowledge of the shooting and that Stamps' statement was inadmissible hearsay. The trial court allowed her to testify, finding that Stamps was unavailable and that his statement to his girlfriend was admissible as a statement of recent perception under WIS. STAT. § 908.045(2).

¶ 4. Stamps' girlfriend, however, testified that she was unable to recall either what Stamps had told her about the shooting or what she told police regarding Stamps' statement to her. The State eventually introduced Stamps' statement to his girlfriend via the testimony of the police detective who questioned her at the time of Stamps' arrest. The detective testified that Stamps' girlfriend told him that Stamps had, within hours after the shooting, told her that while he was talking with the victim through the car window, Manuel "came out of nowhere" and shot the victim.[2]

---

[2] Stamps' girlfriend referred to the shooter as "Twin" and told the detective she did not know Twin's real name. The victim, however, identified Manuel at trial as the shooter, and he testified that he recognized him as a man known as "Twin," whom he had seen in the neighborhood on some twenty prior occasions.

¶ 5. The jury found Manuel guilty of attempted first-degree intentional homicide and five related offenses. He filed a postconviction motion seeking a new trial, asserting evidentiary error, a confrontation clause violation, and ineffective assistance of counsel. The trial court[3] denied his motion for a new trial, concluding that: (1) Stamps' statement was properly admitted as a statement of recent perception because it described an event observed shortly before Stamps spoke to his girlfriend, it was spontaneous and there was no basis to find Stamps made the statement in bad faith; (2) sufficient indications of the reliability or trustworthiness of Stamps' statement were present to satisfy the confrontation clause; and (3) trial counsel had not been ineffective because the failure to impeach Stamps' statement with evidence of his prior convictions did not prejudice Manuel's defense.

¶ 6. Manuel appeals, making the same claims for relief that he did in his postconviction motion. We include additional facts in the analysis which follows.

## ANALYSIS

¶ 7. Manuel claims that the trial court erred in two ways by admitting into evidence Stamps' statement to his girlfriend that Manuel had shot the victim. He first contends that the statement did not meet the requirements for the hearsay exception under Wis. Stat. § 908.045(2) ("Statement of recent perception"), because the record fails to establish that Stamps made the statement in good faith and not in anticipation of

---

[3] Reserve Judge P. Charles Jones presided at Manuel's trial and sentencing. Circuit Judge Stuart A. Schwartz denied the postconviction motion.

litigation. Second, Manuel claims that admission of the statement violated his Sixth Amendment right to be confronted with the witnesses testifying against him.[4]

¶ 8. We begin with the hearsay claim and will not reach the constitutional issue unless we first determine that the challenged out-of-court statement is admissible as either non-hearsay or under a recognized exception. *See State v. Jenkins*, 168 Wis. 2d 175, 185–86, 483 N.W.2d 262 (Ct. App. 1992). Whether to admit hearsay evidence under an exception is a matter committed to the trial court's sound discretion. *State v. Stevens*, 171 Wis. 2d 106, 111, 490 N.W.2d 753 (Ct. App. 1992). We will not reverse an evidentiary ruling if the court properly exercised discretion by applying the correct legal standard to the relevant facts of record. *State v. Sveum*, 220 Wis. 2d 396, 405, 584 N.W.2d 137 (Ct. App. 1998), *review denied,* 2002 WI 111, 256 Wis. 2d 64, 650 N.W.2d 840 (Wis. Jul. 26, 2002) (No. 01–0230). Further-

---

[4] As we have noted, Stamps' girlfriend did not testify as to Stamps' out-of-court statement to her, claiming at trial that she remembered neither what Stamps had told her nor what she had told police on the topic. The State later introduced Stamps' statement to his girlfriend through the detective who had questioned her. Manuel did not object at trial, nor does he now ascribe error, to the admission of Stamps' girlfriend's statement to police, tacitly conceding that her statement to police was not hearsay but the prior statement of a trial witness that was inconsistent with her trial testimony. *See* Wis. Stat. § 908.01(4)(a)1; *State v. Lenarchick*, 74 Wis. 2d 425, 436, 247 N.W.2d 80 (1976) (concluding that "where a witness denies recollection of a prior statement, and . . . the trial judge has reason to doubt the good faith of such denial, he may in his discretion declare such testimony inconsistent and permit the prior statement's admission into evidence"). (See also footnote 7.)

more, if we can conclude that the trial court's decision is supported by the record, we will not reverse it even though the court may have given no reason or a wrong reason for its ruling. *Jenkins*, 168 Wis. 2d at 186.

¶ 9. Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." WIS. STAT. § 908.01(3). There is no dispute that Stamps' statement to his girlfriend that he was present and saw Manuel shoot the victim is hearsay. The trial court admitted Stamps' hearsay statement to his girlfriend under the exception for statements of "recent perception," WIS. STAT. § 908.045(2), which applies when a declarant is "unavailable."[5] Section 908.045(2) reads as follows:

> (2) STATEMENT OF RECENT PERCEPTION. A statement, not in response to the instigation of a person engaged in investigating, litigating, or settling a claim, which narrates, describes, or explains an event or condition recently perceived by the declarant, made in good faith, not in contemplation of pending or anticipated litigation in which the declarant was interested, and while the declarant's recollection was clear.

¶ 10. The recent perception exception is similar to hearsay exceptions for present sense impressions and excited utterances, but it allows for more time between the observation of the event and the statement when a declarant is unavailable and the evidence would otherwise be lost. *State v. Weed*, 2003 WI 85, ¶ 15, 263 Wis. 2d 434, 666 N.W.2d 485. Given the longer lapse of time allowed between a declarant's perception and his or her

---

[5] Stamps refused on Fifth Amendment grounds to testify at Manuel's trial, and Manuel does not dispute that Stamps was thus "unavailable." *See* WIS. STAT. § 908.04(1)(a).

description of the event, the exception as adopted in Wisconsin contains limitations "to assure accuracy and trustworthiness." *Id.* The limitations are:

> (1) the statement was not made in response to the instigation of a person engaged in investigating, litigating, or settling a claim and was made in good faith with no contemplation of pending or anticipated litigation in which the declarant would be an interested party; (2) the statement narrated, described, or explained an event or condition recently perceived by the declarant; and (3) the statement was made while the declarants recollection is clear.

*Id.*, ¶ 14.

¶ 11. The trial court gave the following explanation of its decision to admit Stamps' statement:

> With respect to . . . [Stamps' girlfriend], her testimony in my opinion clearly represents evidence of a recent perception on the part of Mr. Stamps, in that as I understand . . . she would be indicating that this occurred sometime shortly thereafter the incident . . . when he had returned to their apartment, and that it formed the basis for his comments about what had occurred and for their behavior thereafter . . . . I do think it comes in as a statement of recent perception.

Manuel contends the trial court applied the wrong legal standard because it failed to expressly find that Stamps' statement was "made in good faith, not in contemplation of pending or anticipated litigation in which the declarant was interested." Wis. Stat. § 908.045(2). He argues further that, even if the court's failure to make that finding is not reversible error, the record does not support such a finding. We disagree and conclude that

the court did not err in admitting Stamps' statement under § 908.045(2).[6]

¶ 12. The State argued in the trial court that Stamps' statement met the requirement that a statement be "made in good faith [and] not in contemplation of pending or anticipated litigation." Specifically, the State contended that Stamps "was simply trying to tell [his girlfriend] what happened . . . so that she would have a reason also to get out of the house to go with him to this motel to get away from the police officers." We conclude that the court's comment that Stamps' statement "formed the basis . . . for their behavior thereafter" shows that the court, implicitly if not explicitly, accepted the State's proffered inference that Stamps had given the account of the shooting to his girlfriend in order to explain why he wanted her to flee with him to a hotel to avoid the police. *See Hagenkord v. State*, 100 Wis. 2d 452, 464, 302 N.W.2d 421 (1981) (upholding discretionary ruling despite the absence of "an express ruling or an articulation of reasons," where record indicates trial court "acquiesced in the explanation of the prosecutor").

██

¶ 13. Moreover, even if we were to conclude that the trial court did not fully articulate its determination that Stamps made the statement to his girlfriend in good faith and not in contemplation of pending or anticipated litigation, we independently conclude that

---

[6] Manuel does not assert that Stamps had not "recently perceived" the shooting, that he made the statement at a time when his recollection of the shooting was not clear, or that it was made in response to a person investigating the shooting. We therefore do not address these other requirements for admissibility of a statement under Wis. Stat. § 908.045(2).

the record supports this finding. Manuel offers speculation as to several ulterior motives Stamps may have had for saying what he did to his girlfriend. Nothing in the record suggests, however, that Stamps lied to his girlfriend in order, for example, to cover up his own guilt as the shooter or to get back at Manuel for some grudge or rivalry. Stamps made the statement to his girlfriend, who was the mother of his son and presumably someone he trusted and in whom he confided. In addition, the statement implicated a fellow member of a gang to which Stamps belonged, not a member of a rival gang or some other real or perceived enemy of Stamps.

¶ 14. There is also no suggestion in the record that Stamps' girlfriend knew of the shooting or of Stamps' involvement before Stamps told her. Stamps' statement to her was thus spontaneous, as opposed to being in response to a question or accusation. Finally, we note that the victim's testimony at trial, in which he described conversing with Stamps through the car window when Manuel emerged and shot him, largely corroborates the account Stamps gave to his girlfriend. *Cf. Stevens*, 171 Wis. 2d at 119 (noting that "corroboration is the key to reliability of a statement coming under this exception").

¶ 15. Finally, we note that, immediately after Stamps told his girlfriend about the shooting, they and their infant son fled to a nearby hotel. That fact bolsters the plausibility of the motive advanced by the State, rendering it considerably more plausible than Manuel's speculation that Stamps' intent was to plant a story with his girlfriend that concealed his actual involvement as the shooter in anticipation that she would be contacted by police or even testify in his defense. To be sure, Stamps' flight shows that he believed police would soon be investigating the shoot-

ing, and he no doubt further believed that the State would seek to charge someone for it. But these beliefs cannot be enough to make his statement inadmissible under the recent perception exception, as Manuel contends. Adoption of Manuel's position would render Wis. Stat. § 908.045(2) useless in most criminal and tort actions because every injury-producing event could reasonably be said to cause witnesses to anticipate that litigation concerning it may be forthcoming.

¶ 16. In summary, we conclude that the trial court did not erroneously exercise its discretion in admitting Stamps' statement to his girlfriend under Wis. Stat. § 908.045(2). We must therefore consider whether the admission of Stamps' statement to his girlfriend violated Manuel's constitutional right "to be confronted with the witnesses against him." U.S. Const. amend. VI.

¶ 17. A criminal defendant's right to confront the State's witnesses is also guaranteed by article 1, section 7 of the Wisconsin Constitution, which guarantees defendants the right "to meet the witnesses face to face." The rights of a criminal defendant to be confronted with the witnesses against him or her are the same under both constitutions. See Jenkins, 168 Wis. 2d at 185. Thus, Wisconsin courts will generally apply U.S. Supreme Court precedents when interpreting both the state and federal confrontation clauses. See, e.g., Weed, 263 Wis. 2d 434, ¶ 23. Whether the admission of hearsay violates a defendant's confrontation right is a question we decide de novo. Id., ¶ 10.

¶ 18. Until very recently, we would be obliged at this point to assess Manuel's right to be confronted with the State's witnesses under the framework and standards established in Ohio v. Roberts, 448 U.S. 56 (1980).

The Wisconsin Supreme Court has explained that *Roberts* established a two-step analysis:

> The United States Supreme Court has established a two-step approach for analyzing the admission of hearsay evidence under the confrontation clause. *Roberts,* 448 U.S. at 65–66. First, the witness must be "unavailable" for trial. *Id.* Second, the statement of the unavailable witness must bear some "indicia of reliability." *Id.* at 65. With respect to the second prong, "[r]eliability is shown 'if the evidence falls within a firmly rooted hearsay exception' or 'upon a showing of particularized guarantees of trustworthiness.'" *Roberts,* 448 U.S. at 66.

*Weed,* 263 Wis. 2d 434, ¶ 23 (some citations omitted).

¶ 19. The continuing vitality of the *Roberts* approach was called into question, however, by the Supreme Court's recent opinion in *Crawford v. Washington,* 124 S. Ct. 1354 (2004). Justice Scalia, writing for the majority, first examined the historical roots of the confrontation clause and concluded that the history of the clause "supports two inferences" about its meaning. *Id.* at 1363. The first is that "even if the Sixth amendment is not solely concerned with *testimonial hearsay,* that is its primary object." *Id.* at 1365 (emphasis added). The second is "that the Framers would not have allowed admission of *testimonial statements* of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* (emphasis added).

¶ 20. After its historical analysis, the *Crawford* majority devotes several pages of its opinion to critiquing the reasoning and results in federal and state appellate opinions applying the *Roberts* tests. The Court concluded that the "unpardonable vice of the *Roberts* test . . . is not its unpredictability, but its dem-

onstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." *Id.* at 1371. The Court then expressly discarded the "*Roberts* test" for determining the admissibility of "testimonial" hearsay statements. The new rule announced for the admission of testimonial hearsay statements is this: the testimonial statement of a person absent from trial may only be admitted in conformity with the confrontation clause if the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant regarding the statement. *Id.* at 1374.

¶ 21. Even though the Court distinguished between testimonial and non-testimonial hearsay evidence, and applied the newly announced rule only to testimonial statements, it left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Id.* The Court did say that, "at a minimum," testimonial hearsay includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations." *Id.*[7] Despite the

---

[7] As we have noted (see footnote 4), Manuel does not challenge, on either hearsay or confrontation clause grounds, the introduction of Stamps' statement by way of the police detective's testimony regarding what Stamps' girlfriend told him Stamps had said to her. The girlfriend's responses to the detective's questioning, although not hearsay pursuant to Wis. Stat. § 908.01(4)(a)1, might nonetheless be considered an out-of-court "testimonial" statement under *Crawford v. Washington*, 124 S. Ct. 1354 (2004). However, its introduction does not appear to violate the confrontation clause because the girlfriend testified at trial and was thus subject to Manuel's cross-examination regarding her statements to the detective. *See also Vogel v. State*, 96 Wis. 2d 372, 386–93, 291 N.W.2d 838 (1980) (concluding that the introduction of a trial witness's prior statement to police, after witness claimed not to remember it,

Court's failure to provide a "comprehensive definition," we have little difficulty concluding that Stamps' statement to his girlfriend is *not* "testimonial" in nature. The statement was not made to an agent of the government or to someone engaged in investigating the shooting. The statement thus does not fall within any of the categories of testimonial statements expressly identified in *Crawford* (prior trial, preliminary-hearing and grand-jury testimony, and statements made during police interrogations). Neither does it appear to be the type of statement the Court found had historically been the "primary object" of the framer's concerns in enacting the confrontation clause. *See id.* at 1363–65.

¶ 22. The question remains, after *Crawford*, what test should be applied to determine whether the admission of Stamps' "nontestimonial" statement violated Manuel's confrontation right under the U.S. and Wisconsin Constitutions? The Supreme Court's answer was, at best, equivocal: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Id.* at 1374. One could read this pronouncement, together with the Court's earlier conclusion that the "primary object" of the confrontation clause is testimonial hearsay and the Court's extensive criticism of the *Roberts*

did not violate confrontation clause because witness was subject to cross-examination concerning the prior statement).

approach,[8] to mean that the admissibility of non-testimonial hearsay in criminal trials requires no Sixth Amendment analysis whatsoever, being determinable solely by application of evidentiary rules.[9]

¶ 23. Because the *Crawford* majority did not expressly overrule *Roberts*, however, we proceed, in an abundance of caution, to analyze Manuel's confrontation clause claim under the *Roberts* analysis as discussed and applied in *Weed*.[10] Under the second step of

---

[8] "Reliability is an amorphous, if not entirely subjective, concept," *Crawford*, 124 S. Ct. at 1371; "*Roberts*' failings were on full display in the proceedings below," *id.* at 1372.

[9] One Wisconsin commentator endorses this reading of *Crawford*'s impact on the admissibility of non-testimonial hearsay:

> At the same time, however, the *Crawford* decision's reliance on "testimonial" evidence explicitly left open flexibility (including a reliability test) for the use of nontestimonial hearsay evidence. This type of evidence, according to the Court, did not implicate core Sixth Amendment concerns and should be more freely admitted at trial. The Court cited business records and coconspirator statements as two hearsay exceptions that do not involve testimonial evidence and thus do not require the Sixth Amendment right of confrontation.

Steven M. Biskupic, *Hearsay and the Confrontation Clause,* WISCONSIN LAW., May 2004, at 19.

[10] Chief Justice Rehnquist, in a concurrence asserted that "the Court of course overrules *Ohio v. Roberts*." *Crawford*, 124 S. Ct. at 1378 (Rehnquist, C.J., concurring). We note, however, that the Connecticut Supreme Court has concluded that *Crawford* leaves the *Roberts* tests in place for determining the admissibility of nontestimonial hearsay. *State v. Rivera*, 844 A.2d 191, 201 (Conn. 2004) (quoting *Crawford*, 124 S. Ct. at 1374 and holding that, "[i]n other words, nontestimonial hearsay statements may still be admitted as evidence against an

the *Roberts* test,[11] a statement is presumptively reliable if it falls within a firmly rooted hearsay exception. *Weed*, 263 Wis. 2d 434, ¶ 23. A hearsay exception is firmly rooted if, "in light of longstanding judicial and legislative experience" it "rest[s] [on] such [a] solid foundatio[n] that admission of virtually any evidence within [it] comports with the substance of the constitutional protection." *Lilly v. Virginia*, 527 U.S. 116, 126 (1999) (citations omitted). For example, spontaneous declarations or excited utterances are considered to be firmly rooted hearsay exceptions because they are at least two centuries old, widely accepted among the states, and have substantial guarantees of trustworthiness. *See id.*; *see also White v. Illinois*, 502 U.S. 346, 357 (1992). The dying declaration exception and the exception for statements made for the purpose of obtaining medical treatment are also considered firmly rooted. *See Idaho v. Wright*, 497 U.S. 805, 820–21 (1990).

¶ 24. By contrast, the recent perception hearsay exception is not a common law exception and it is of recent vintage. *See* 4 JACK B. WEINSTEIN ET AL., WEINSTEINS EVIDENCE 804(b)(5)[04], 201–05 (1996). It did not become a part of the Wisconsin evidence code until 1974 and, at the time of its adoption, was described as a major change in Wisconsin law which presently would characterize the statement as inadmissible hearsay. Judicial Council Committee's Note, 1974, WIS. STAT.

---

accused in a criminal trial if it satisfies both prongs of the *Roberts* test, irrespective of whether the defendant has had a prior opportunity to cross-examine the declarant").

[11] The first step is witness unavailability, *State v. Weed*, 2003 WI 85, ¶ 23, 263 Wis. 2d 434, 666 N.W.2d 485, but as we have noted (see footnote 5), Manuel does not dispute that Stamps was unavailable to testify at trial.

ANN. § 908.045 (West 2000).[12] It appears that only three states in addition to Wisconsin currently recognize this exception: Hawaii, Kansas, and Wyoming. *See* HAW. REV. STAT. RULE 804(b)(5) (2002); KAN. ST. ANN. § 60–460(d)(3) (1997); WYO. STAT. RULE 804(b)(5) (1978).

¶ 25. We have noted on several occasions that "there may be debate" over whether the recent perception exception is firmly rooted. *See State v. Ballos*, 230 Wis. 2d 495, 510, 602 N.W.2d 117 (Ct. App. 1999) (citing *Kluever v. Evangelical Reformed Immanuels Congregation*, 143 Wis. 2d 806, 813–14, 422 N.W.2d 874 (Ct. App. 1988)). The supreme court in *Weed* "assum[ed] that the recent perception exception is not firmly rooted" because "it is a relatively recent exception that has only been adopted by a few states, and is not based in the common law." *Weed*, 263 Wis. 2d 434, ¶ 24. We now take the final step suggested by these precedents and conclude that the recent perception exception under WIS.

---

[12] Wisconsin's recent perception exception is modeled on the rule proposed by the United States Supreme Court when it first promulgated the Federal Rules of Evidence in 1972. *See* 4 JACK B. WEINSTEIN ET AL., WEINSTEINS EVIDENCE 804(b)(5)[04], 201, 206 (1996). The proposed federal rule was rejected by Congress the following year, however, and the Federal Rules of Evidence thus do not include an exception for statements of recent perception. A report from the House of Representatives Committee on the Judiciary provides the following basis for Congress's rejection of proposed Rule 804(b)(2): "The Committee eliminated this Rule as creating a new and unwarranted hearsay exception of great potential breadth. The Committee did not believe that statements of the type referred to bore sufficient guarantees of trustworthiness to justify admissibility." *Id.,* 804–13 (quoting H.R. REP. No. 93–650, at 6 (1973)).

STAT. § 908.045(2) is not a firmly rooted hearsay exception because it lacks historical longevity and enjoys very limited acceptance.

¶ 26. Our conclusion is not necessarily fatal to the admissibility of Stamps' statement, however. Even if hearsay is admitted against a criminal defendant under an exception that is not firmly rooted, the confrontation clause is satisfied so long as the evidence bears "particularized guarantees of trustworthiness." *Weed*, 263 Wis. 2d 434, ¶ 23. The supreme court instructs us to proceed as follows:

> In evaluating whether a statement evinces particularized guarantees of trustworthiness, we consider the "totality of the circumstances, but ... the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." Some factors that have been considered in assessing the reliability of a statement include spontaneity, consistency, mental state, and a lack of motive to fabricate. We look to see "if the declarants truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility ...." In other words, we examine whether the statement is "so trustworthy that adversarial testing would add little to its reliability."

*Id.*, 25 (citations omitted).

¶ 27. As applied to this case, the confrontation clause "trustworthiness" analysis is arguably circular in that it requires us to restate conclusions we have already reached in determining that Stamps' statement was admissible under Wis. STAT. § 908.045(2). In concluding that Stamps' statement to his girlfriend was properly admitted as a statement of recent perception, we determined that it was "made in good faith [and] not

in contemplation of pending or anticipated litigation." In our hearsay analysis, we also explained why we rejected Manuel's speculations regarding Stamps' possible motives to fabricate, and we stated our conclusion that the record supports no other reasonable inference than that Stamps' statement was a spontaneous comment to his girlfriend, motivated by his need to explain why he wished to take her and their son to a motel for a few days.

¶ 28. We are thus satisfied that the circumstances surrounding Stamps' statement to his girlfriend render it sufficiently reliable that cross-examining Stamps as to its truthfulness would be of "marginal utility." *Weed*, 263 Wis. 2d 434, ¶ 25. Accordingly, admission of the statement did not violate Manuel's rights under the state and federal confrontation clauses.[13]

■■■■

¶ 29. Manuel's final claim is that he was deprived of his Sixth Amendment right to the effective assistance of counsel because his attorney failed to introduce evidence of Stamps' prior convictions. To sustain an ineffective assistance of counsel claim, a defendant must show that his trial counsel's performance was

---

[13] On the possibility that we might conclude Manuel waived his confrontation clause challenge because his. trial counsel insufficiently raised it in the trial court, Manuel makes the alternative argument that his attorney's failure to properly raise a Confrontation Clause objection constituted ineffective assistance of counsel. We have chosen to address the constitutional claim directly and have rejected it on its merits. Thus, any objection to Stamps' statement on Sixth Amendment grounds by Manuel's trial counsel would have been properly overruled, and the failure to object on these grounds does not constitute deficient performance. *See State v. Traylor*, 170 Wis. 2d 393, 405, 489 N.W.2d 626 (Ct. App. 1992).

deficient and that this performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show that counsel's performance prejudiced the defense, the defendant has the burden to prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 30. Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact. *See State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). We will not reverse the trial court's factual findings regarding counsel's actions unless they are clearly erroneous. *See id.* at 634. Whether counsel's performance was deficient and whether it prejudiced the defendant are questions of law we decide de novo. *See id.* In evaluating Manuel's claim, this court can choose to address either the "deficient performance" or the "prejudice" component first. *Strickland*, 466 U.S. at 697. If his claim fails on either component, we need not address the other. *See id.*

¶ 31. The State contends that trial counsel's failure to introduce evidence of Stamps' prior convictions in order to impeach the credibility of Stamps' statement did not result in prejudice to Manuel's defense. The State notes that the jury heard evidence that Stamps was a gang member, and that he had been arrested and taken to jail on a probation hold. The State argues that the jury had ample reason to question Stamps' credibility based on his gang affiliation and his conviction of a crime resulting in probation, and, therefore, evidence of

the exact number of Stamps' convictions would have been of only marginal value in undermining Stamps' credibility. We agree.

¶ 32. The victim of the shooting testified that Stamps was a member of a street gang, and the police officer who spoke to his girlfriend testified that Stamps was arrested and taken to jail on a probation hold. Manuel argues that a jury of "laypersons" would not necessarily know that someone on probation had previously been convicted of a crime, and, moreover, even if jurors did make this inference, knowledge of Stamps' actual number of convictions (four) would have dealt a more significant blow to Stamps' credibility. We are not persuaded, however, that most jurors would not perceive that someone on probation had been convicted of a crime—that fact is not so obscure as to be beyond the knowledge of the average juror. And, when jurors are informed of a witness's criminal past, the precise number of the witness's convictions is unlikely to be outcome determinative. *See State v. Trawitzki*, 2001 WI 77, ¶ 44, 244 Wis. 2d 523, 628 N.W.2d 801.

¶ 33. Finally, we note that the record provides an alternative basis on which we may conclude that the failure to introduce evidence of Stamps' four convictions was not prejudicial. When a record contains strong evidence to support a verdict, it is less likely that a defendant can prove prejudice. *Strickland*, 466 U.S. at 696. The victim testified that he was acquainted with Manuel, that he had picked out Manuel's photo from an array as the shooter, and that he told police that he was "a hundred percent sure" of the identification. Circumstantial and physical evidence also placed Manuel at the scene of the crime. The police photographed shoe impressions made by the group of men standing on the

terrace near the street where the shooting occurred. An expert from the State Crime Lab testified that shoes taken from the trunk of Manuel's car were consistent with the photographed impressions. Thus, the State produced strong evidence independent of Stamps' statement supporting Manuel's guilt, and Stamps' credibility was not crucial to the State's case against Manuel.

¶ 34. We conclude that, even if evidence of the number of Stamps' convictions would have incrementally weakened Stamps' credibility, there is no reasonable probability that the result of Manuel's trial would have been different if his counsel had established that Stamps had been convicted of four crimes. Because we conclude that Manuel has not satisfied his burden to prove that his attorney's performance prejudiced his defense, we do not address whether counsel's performance was deficient. *See id.* at 697.

## CONCLUSION

¶ 35. For the reasons discussed above, we affirm the appealed judgment and order.

*By the Court.*—Judgment and order affirmed.