888 So.2d 66 (2004)
Marcelino HERRERA-VEGA, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-1817.
District Court of Appeal of Florida, Fifth District.
October 22, 2004.
Rehearing Denied December 14, 2004.
*67 James B. Gibson, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Bonnie Jean Parrish, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
Marcelino Herrera-Vega ["Vega"] timely appeals his conviction for sexual battery. We affirm his conviction and write only to address the issue he has raised in reliance on Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
On July 14, 2002, three-year-old D.H. spontaneously told her mother, as she was putting on the child's underpants, that twenty-year-old Vega had placed his tongue in her "private parts." D.H. reluctantly repeated the story to her father minutes later. D.H.'s father confronted Vega the following morning, and Vega confessed to touching D.H. sexually with both his penis and tongue. The police were called and Vega confessed to the investigating officer that he had had sexual contact with the victim on multiple occasions. Vega was placed under arrest and taken to the station, where he again confessed in a recorded interview to sexual contact with the victim. Based on the report made by D.H. to her parents, and the confessions made by Vega, he was charged by information with two counts of capital sexual battery and one count of lewd and lascivious molestation.
D.H. refused to repeat to anyone else what she had told her parents about the incident. She was therefore found to be "unavailable" as a witness for trial within the meaning of section 90.803(23), Florida Statutes, and no attempt was made to call her to testify.[1] In lieu of her testimony, the State offered two forms of evidence that Vega had sexually abused D.H.  hearsay testimony from the victim's parents and Vega's confession.
Both the victim's mother and father testified that D.H. had reported that Vega had placed his tongue between her legs on at least one occasion. In addition, the victim's father testified that Vega had confessed to him that he had not only done what their daughter said, but he had "put [his thing] in [D.H.]'s private part."
The State also introduced into evidence a taped confession made by Vega during an interview which took place on July 15, 2002. During the interview, Vega confessed to having sexual contact with the victim on multiple occasions when she came to his room. He clearly admitted to touching the child's "vagina" and taking out his penis. *68 He also admitted that he stuck his tongue "inside" the victim's vagina twice. However, he made conflicting statements on the issue of whether he had penetrated the child in any way, with either his finger or penis.
At the close of the State's evidence, the court granted Vega's motion for a judgment of acquittal on two counts of the information because there was no evidence of guilt apart from Vega's confessions. However, the court refused to grant a judgment of acquittal for one count of capital sexual battery, which was based on allegations that Vega's mouth had union with D.H.'s "sexual organ."
Vega, who lived next door to the victim and shared a duplex with five other roommates, denied being alone with the victim. He testified that he never penetrated the victim's vagina with his penis, and he never used his tongue to lick her vagina. He claimed he had confessed to D.H.'s father because the father had threatened to kill him. He said he had confessed to police because he was nervous and very "afraid." When he told detectives that he had been with the victim ten times, he meant only that he had touched her in a non-sexual way.
Vega was found guilty as charged of capital sexual battery under count II of the information. He was sentenced to life in prison, without the possibility of parole. His motion for new trial was denied.
While his case was on appeal, Vega submitted to this court supplemental authority in the form of Crawford v. Washington, 124 S.Ct. 1354. By his citation to Crawford, Vega implies that the admission of testimony from D.H.'s parents regarding statements made by D.H. violated his federal constitutional confrontation rights because he was given no opportunity to cross-examine D.H.
In Crawford, the United States Supreme Court held that the admission of testimonial hearsay statements against an accused violates the confrontation clause of the United States Constitution if the declarant is unavailable to testify at trial and the accused had no "prior opportunity" to "cross-examine" the witness. In so holding, the court receded from Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), in which the high court had held that the confrontation clause does not bar admission of an unavailable witness's statement against a criminal defendant if the statement bears "adequate indicia of reliability." 124 S.Ct. at 1374. The Florida Supreme Court relied on Ohio v. Roberts in finding that section 90.803(23), Florida Statutes, met the requirements of the confrontation clause in cases in which the victim did not testify at trial. Perez v. State, 536 So.2d 206 (Fla.1988).
We pass over the preservation of error issue in this case because Crawford does not entitle Vega to any relief. Crawford applies to hearsay that is "testimonial" in nature. Although the Crawford court declined to give a comprehensive definition of "testimonial," the court did say that testimonial evidence consists of prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and police interrogations. Id. The opinion also indicates that "testimonial" statements principally are those made with the expectation that they will be used for the purposes of a criminal prosecution. The court explained that:
[The Confrontation Clause] applies to "witnesses" against the accused  in other words, those who "bear testimony." 1 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Ibid. An accuser who makes a *69 formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.
Various formulations of this core class of "testimonial" statements exist: "ex parte in-court testimony or its functional equivalent  that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," Brief for Petitioner 23; "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," White v. Illinois, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (THOMAS, J., joined by SCALIA, J., concurring in part and concurring in judgment); "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," Brief for National Association of Criminal Defense Lawyers et al. as Amici Curiae 3. These formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it. Regardless of the precise articulation, some statements qualify under any definition  for example, ex parte testimony at a preliminary hearing.
124 S.Ct. at 1364 (footnotes omitted).
Whatever the United States Supreme Court eventually decides "testimonial" evidence consists of, it does not appear to include the spontaneous statements made by D.H. to her mother while being dressed, nor does it include D.H.'s statements to her father.[2]See Somervell v. State, 883 So.2d 836 (Fla. 5th DCA 2004). Moreover, Crawford made clear that, where nontestimonial hearsay is at issue, such as that involved in this case, the individual states have "flexibility in their development of hearsay law" and can even exempt such statements from confrontation clause scrutiny altogether. 124 S.Ct. at 1374. In this state, the admission of these statements is controlled by section 90.803(23), Florida Statutes. We find no error in their admission under the statute and, accordingly, we affirm.
AFFIRMED.
PETERSON and ORFINGER, JJ., concur.
NOTES
[1] Her continuing refusal to discuss the abuse was only one of the factors indicating unavailability. Other factors included her age, a potential learning disability, and certain language disabilities, including a stutter.
[2] It appears that our conclusion concerning the reach of Crawford is consistent with that of other courts faced with similar or analogous facts. See United States v. Lopez, 380 F.3d 538 (1st Cir.2004); Horton v. Allen, 370 F.3d 75 (1st Cir.2004); State v. Blackstock, 598 S.E.2d 412 (N.C.Ct.App.2004); State v. Manuel, 685 N.W.2d 525 (Wis.Ct.App.2004).